# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
June 29, 2011 Session

## STATE OF TENNESSEE v. DANTHONY MICHAEL PENDER

**Appeal from the Criminal Court for Sullivan County**
**No. S50417    Robert H. Montgomery, Judge**

---

**No.  E2010-01859-CCA-R3-CD - Filed August 24, 2011**

---

Appellant, Danthony Michael Pender, was indicted by the Sullivan County Grand Jury for aggravated robbery in August of 2008.  After a jury trial, Appellant was convicted as charged and sentenced as a Range I, standard offender to twelve years in incarceration.  Appellant seeks a review of his conviction after the denial of a motion for new trial.  On appeal, the following issues are presented for our review: (1) whether the evidence is sufficient to support the conviction; (2) whether the jury verdict was contrary to the law and evidence; (3) whether the trial court erred by failing to grant the motion for judgment of acquittal; and (4) whether the trial court erred by denying the motion for new trial.  After a review, we determine that all of Appellant's issues involve the sufficiency of the convicting evidence. We determine that the evidence was sufficient to sustain the conviction.  Accordingly, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and D. KELLY THOMAS, JR., JJ., joined.

K. Jeffrey Luethke, (on appeal) and Kristen Morrell, (at trial) Kingsport, Tennessee, for the appellant, Danthony Michael Pender.

Robert E. Cooper, Jr., Attorney General and Reporter; John H. Bledsoe, Senior Counsel; H. Greeley Wells, District Attorney General; and William B. Harper, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Factual Background*

On the afternoon of Sunday, May 11, 2003, Jennifer Leagan was working at the Bristol Health Food Store in Bristol, Tennessee. Ms. Leagan owned the shop. Clennie Bowers, an employee, was working alongside Ms. Leagan. Sometime that afternoon, the bell at the front door rang, indicating to Ms. Leagan and Ms. Bowers that someone had entered the store. Ms. Leagan was at a table at the end of the counter at the time. She looked up and saw a man with a ski mask and a gun who demanded money. He stated, "I want your money now," as he walked down an aisle of the store. Both Ms. Leagan and Ms. Bowers thought the man was joking until he yelled "now."

Ms. Leagan walked to the cash register and the perpetrator told Ms. Bowers to go to the back of the store. Ms. Leagan pulled the drawer out of the cash register and laid it on the counter. The perpetrator again said, "I want your money now." Ms. Leagan did not "feel real comfortable because [she] had a gun pointed at [her]." She described the event as "scary."

Ms. Leagan described the perpetrator as around six feet tall with a medium build and not broad-shouldered. Ms. Leagan recalled that the man's voice was not extremely deep but not high either. Ms. Leagan could tell that the man was African-American. He wore a ski mask, brown cotton knit gloves, and a dark t-shirt. Ms. Leagan described the gun as black and "the kind where you have the clip that goes in the bottom."

Ms. Bowers described the perpetrator as black and tall with broad shoulders. He was not heavy set. Ms. Bowers recalled that he had on a dark ski mask, a dark hoodie, dark clothing, and gloves. The perpetrator carried a gun.

The perpetrator made off with $259 from the register then told Ms. Leagan to go to the back of the store. Ms. Leagan heard the door bell ring as she got to the back of the store. This made her think that the perpetrator had left the store. Ms. Bowers had already called 911. Ms. Leagan got on the phone with the 911 dispatcher and gave her information about the robbery.

Right after the perpetrator left the store, Ms. Bowers's daughter, Heather, came into the parking lot at the store to return her mother's vehicle. [1] It was between 3:30 p.m. and 4:00 p.m. When Heather Bowers approached the store, she passed a 1984-87 gray Chevrolet Celebrity with two male occupants. She was able to describe the car in such detail because of her experience in working at a car lot. The passenger was "leaned over talking to the driver with his arm down behind his back doing something, . . . basically on top of the driver." The driver was Caucasian and the passenger was African-American. Heather Bowers was able to provide a description to the 911 dispatcher.

The next morning, Ms. Leagan saw a news story on television about the robbery. There was a picture of a man that was alleged to have been driving the getaway car.[2] Ms. Leagan recognized the man because he came into the store on the day of the robbery. She recognized his face and his t-shirt, commenting:

> The t-shirt had a tray on it with a Skill saw on it with a hammer that had been sawed in to [sic] and it said Real Men Don't Need Instructions, or Real Men Don't Need Directions.

Ms. Leagan had even commented on the t-shirt when the man was in the store, making another employee look at the shirt too. Ms. Leagan informed the police that she recognized the man.

Lieutenant Craig Beyer of the Bristol Police Department responded to the dispatch call reporting the robbery.[3] Lieutenant Beyer saw a faded Blue Chevrolet Celebrity on Eighth Street with a white male driver. The car was headed toward Bristol, Virginia. Lieutenant Beyer followed the car, never losing sight of it. The car sped up after it entered Virginia. Lieutenant Beyer could see an African-American male in the passenger seat. The man jumped out of the car near an alley. He was approximately six feet tall and wearing a blue t-shirt. Lieutenant Beyer continued to follow the car. Another officer, James Almany

---

[1] Ms. Heather Bowers was unavailable to testify at Appellant's trial due to injuries sustained in a automobile accident. The testimony that she gave at the trial of Michael James Grubb, the co-defendant, was read into evidence at Appellant's trial on agreement of the parties. *See State v. Michael James Grubb*, No. E2005-01555-CCA-R3-CD, 2006 WL 1005136, at *1 (Tenn. Crim. App., at Knoxville, Apr. 18, 2006).

[2] The man in the picture was Michael James Grubb, the co-defendant.

[3] Lieutenant Beyer died prior to trial. The testimony that he gave at the preliminary hearing for Co-defendant Grubb was played for the jury, and a transcript of the testimony was admitted at trial.

from the Bristol Tennessee Police Department, stopped his car and followed the suspect on foot with his K-9. Officer Almany was unable to locate the suspect.

Lieutenant Beyer stopped the vehicle a few blocks later with the assistance of the Bristol, Virginia Police. The car was registered to Co-defendant Grubb, who was driving the vehicle. Lieutenant Beyer noticed a plastic bag in the passenger seat containing a gun, a pair of gloves, and a canister of pepper spray. A ski mask was also recovered from the car.

Appellant was interviewed prior to his arrest. He waived his Miranda rights and agreed to be interviewed by Officer Johnny Hale of the Bristol Police Department on May 15, 2003. Appellant claimed that he worked with Co-defendant Grubb at Exide. He saw Co-defendant Grubb the day before the robbery and helped him work on his car for about thirty to forty-five minutes. He claimed that he knew about the robbery but was "at home and heard it on TV." Appellant stated that he was not near "Buckner Street on Sunday the 11th but [he does] live just about a block away from Russell Street." Appellant gave a hair and saliva sample for DNA analysis.

The car was towed to the Bristol, Tennessee Police Department. Bradley Everette, a special agent forensic scientist with the Tennessee Bureau of Investigation ("TBI"), performed a DNA analysis on the gloves that were found in the car. They tested positive for a small amount of DNA but not enough to obtain a DNA profile. The ski mask, on the other hand, tested positive for epithelial, a component of saliva. The sample contained DNA from both a minor and major contributor. There was not enough of a sample from the minor contributor to determine if the person was male or female. The major contributor was determined to be male. When the DNA profile was run through the CODIS database for comparison, Appellant was identified as a possible match. A sample was taken from Appellant for comparative testing. Appellant's DNA profile matched that of the major contributor to the DNA on the ski mask. Appellant's fingerprints were not found in the car.

Appellant's sister, Velda Pender, heard about the robbery on Mother's Day. She visited her brother that afternoon at his home. He was watching television at the time she got to his home. Ms. Pender told Appellant that she had heard about Co-defendant Grubb's involvement in a robbery. According to Ms. Pender, Appellant was surprised.

At the conclusion of the trial, the jury found Appellant guilty of aggravated robbery. At a sentencing hearing, the trial court sentenced Appellant to twelve years in incarceration. The trial court denied a motion for new trial. Appellant argues on appeal that: (1) the evidence is insufficient to support the conviction; (2) the jury verdict was contrary to the law and evidence; (3) the trial court erred by failing to grant the motion for judgment of acquittal; and (4) the trial court erred by denying the motion for new trial.

*Analysis*

On appeal, Appellant raises several issues, all of which revolve around the sufficiency of the evidence. Appellant contends that his identity was not sufficiently established by circumstantial evidence. Specifically, he argues that the circumstantial evidence does not "'exclude every other reasonable hypothesis save the guilt of the defendant.'" *See State v. Lewter*, 313 S.W.3d 745, 748 (Tenn. 2010) (quoting *State v. crawford*, 420 S.W.2d 610, 612-13 (Tenn. 1971)). Appellant also cites *State v. David Lynn Sisk*, Nos. E2009-00320-CCA-R3-C and E2009-00320-CCA-R3-CD, 2010 WL 3502512 (Tenn. Crim. App., at Knoxville, Sept. 8, 2010), *rev'd in part and remanded by State v. David Lynn Sisk*, E2009-00320-SC-R11-CD, 2011 WL 2350304, ___ S.W.3d ___ (Tenn. June 15, 2011), to support his argument. The State, on the other hand, notes that Appellant fails to cite to the most recent supreme court case on the use of circumstantial evidence, *State v. Dorantes*, 331 S.W.3d 370 (Tenn. 2011), and argues that the evidence was sufficient to support the conviction.

To begin our analysis, we note that when a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S .W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990).

The guilt of a defendant, as well as any fact required to be proved, may be established by direct evidence, by circumstantial evidence, or by a combination of both. *See State v.*

*Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). Recently, in *David Lynn Sisk*, the supreme court clarified the use of circumstantial evidence as a basis for a conviction. In *David Lynn Sisk*, the defendant was convicted of aggravated burglary and theft at trial, primarily on the basis of circumstantial evidence. 2011 WL 2350304, at *2. The circumstantial evidence involved a cigarette butt that was found at the scene and contained a match to the defendant's DNA. *Id.* On appeal, this Court reversed, holding that the evidence was insufficient to support the convictions for aggravated burglary and theft of $10,000 or more but less than $60,000. *Id.* at *1. The State appealed, arguing that the convictions should be reinstated. On appeal to the supreme court, the court chronicled the history of the use of convictions based on circumstantial evidence stating:

> Years ago, in *State v. Crawford*, 225 Tenn. 478, 470 S.W.2d 610 (1971), this Court adopted a standard of proof in criminal prosecutions based exclusively upon circumstantial evidence that purportedly required the State to prove facts and circumstances "so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant, and that beyond a reasonable doubt." *Id.* at 612. This Court also stated in *Crawford* that in such cases, "[a] web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." *Id.* at 613. This language was recited for years by Tennessee courts as controlling in those cases in which the sufficiency of exclusively circumstantial evidence was at issue; indeed, it was used by both the Court of Criminal Appeals and the trial court in this case. *See Sisk*, 2010 WL 3502512, at *2. In *State v. James*, 315 S.W.3d 440, 455 n. 14 (Tenn. 2010), however, we pointed out the inconsistency between the terminology employed in *Crawford* and its progeny and the standard of proof applied by the United States Supreme Court in those cases in which the evidence is solely circumstantial. *See Jackson*, 443 U.S. at 326, 99 S.Ct. 2781 (rejecting the notion "that the prosecution [i]s under an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt"). Finally, in *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011), we adopted the federal standard in Tennessee and eschewed any distinction between the standard of proof required in cases based solely upon circumstantial evidence and that in cases where direct evidence of guilt is presented by the State. Although we observed in *Dorantes* that, as a practical matter, there was little difference between the federal standard and the "reasonable hypothesis" language used in *Crawford*, we also noted that, depending on the nature of the circumstantial evidence presented at trial, the adoption of the federal standard of proof could result in a different outcome in some cases. *Id.*

*Id.* at \*4 (footnotes omitted). Based on that reasoning, the court reinstated the defendant's convictions, finding:

> The undamaged condition of the cigarette butt, Detective Grooms' testimony that it was unlikely the cigarette had been tracked into the house and that the victims themselves were not smokers, the proximity of the Defendant's residence to the burglarized house, the fact that the Defendant often was seen smoking outside and had never been invited into the victims' residence, and the Defendant's flight from police on January 3, 2007, all corroborate the DNA evidence. While the intermediate appellate court posited that "[s]everal plausible explanations for the presence of the defendant's cigarette inside the victims' residence come to mind, including that the cigarette butt was 'tracked' into the residence," *Sisk*, 2010 WL 3502512, at \*3, our duty on appeal of a conviction is not to contemplate all plausible inferences in the Defendant's favor, but to draw all reasonable inferences from the evidence in favor of the State. Given Detective Grooms' description of the cigarette butt and its location [on the bottom of his shoe], it was perfectly reasonable for the jury to believe the State's theory that the Defendant had entered the victims' residence during the burglary and left the cigarette butt there. The evidence is sufficient to support the jury's verdict.

*Id.* at \*6 (footnote omitted). By reinstating the convictions in *David Lynn Sisk*, our supreme court made clear that "[t]he standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *See State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Applying the analysis utilized in *David Lynn Sisk* and *Dorantes* to the case herein, we review the evidence at trial in a light most favorable to the State. Appellant was convicted of aggravated robbery. Robbery is the "intentional or knowing theft of property from the person of another by violence or putting the person in fear." T.C.A. § 39-13-401(a). A robbery becomes aggravated either when the victim is seriously injured or when the defendant "display[s] . . . any article used . . . to lead the victim to reasonably believe it to be a deadly weapon." T.C.A. § 39-13-402(a).

Both Ms. Leagan and Clennie Bowers confirmed that the perpetrator was an African-American male who was about six feet tall and wore dark clothing, a dark ski mask, and brown knit gloves. The perpetrator was carrying a black handgun. Heather Bowers arrived at the scene shortly after the robbery and saw a 1984 to 1986 Chevrolet Celebrity leaving the scene. The car had a Caucasian male driver and an African-American male passenger. The

passenger was leaning over toward the driver with his arm down behind his back. Police located the car and followed it to Bristol, Virginia. The passenger jumped out of the car and escaped on foot. Co-defendant Grubbs was arrested as the driver of the car. The car contained a black pistol, a ski mask, and brown knit gloves. The ski mask contained DNA matching the DNA of Appellant.

Although a close case, the evidence is sufficient to support the conviction under the analysis announced in *Dorantes*. A man matching Appellant's description was seen leaving the scene of the crime in a car that contained a gun, ski mask with Appellant's DNA, and brown knit gloves. Again, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *Pruett*, 788 S.W.2d at 561. Appellant is not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE