IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 28, 2011

## STATE OF TENNESSEE v. JON LOGSDON

**Direct Appeal from the Circuit Court for Blount County**
**Nos. C-18139, C-18140, C-18141     David R. Duggan, Judge**

_____

**No. E2011-00359-CCA-R3-CD - Filed February 13, 2012**

_____

A Blount County jury convicted the Defendant-Appellant, Jon Logsdon, of two counts of solicitation of a minor to commit especially aggravated sexual exploitation of a minor, a Class C felony, two counts of solicitation of a minor to commit aggravated statutory rape, a Class E felony, and four counts of solicitation of the sexual exploitation of a minor, a Class E felony. He received an effective sentence of four years in the Department of Correction. The sole issue presented for review on appeal is whether the evidence was sufficient to prove the element of Logsdon's reasonable belief that undercover officers posing as minors were under eighteen years of age. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ALAN E. GLENN and D. KELLY THOMAS, JR., JJ., joined.

Mack Garner, District Public Defender; Tiffany Deaderick (at trial), Assistant Public Defender, Maryville, Tennessee; J. Liddell Kirk (on appeal), Knoxville, Tennessee, for the Defendant-Appellant, Jon Logsdon.

Robert E. Cooper, Jr., Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; Michael L. Flynn, District Attorney General; Clinton Frazier and Betsy Brockman, Assistant District Attorneys General, for the Appellee, State of Tennessee.

## OPINION

**Trial.** This case arises from a number of online conversations and telephone calls that Logsdon conducted with two Blount County Sheriff's Office investigators posing as minor girls. In those conversations, Logsdon solicited the commission of a number of sexual acts and sent them pornographic photographs and videos. Logsdon contests the sufficiency of the

evidence based only on the proof offered to show that he reasonably believed that the officers posing as minors were under eighteen years old, an element common to all the crimes for which he was convicted. We will therefore focus on the evidence produced at trial pertinent to this element.

Special Investigator Kelly Hoard with the Blount County Sheriff's Office testified that on November 20, 2008, he was working in an undercover capacity and used the screen name "kelli_luvs2cheer" to enter a Yahoo chat room. Logsdon, using the screen name "tenn_hubby," initiated a conversation with "kelli_luvs2cheer." Investigator Hoard utilized a software program to record the on-screen proceedings, from which a transcript of the conversation was produced. The transcript was read into the record and admitted as an exhibit. Immediately after Logsdon initiated the conversation, he requested to know the age and sex of "kelli_luvs2cheer." She informed him that she was a fourteen-year-old female. She told him that she was home schooled. He inquired whether she had a webcam, and she responded that "Mom won't let me have a cam." At Logsdon's request, they exchanged photographs, which were admitted as exhibits at trial. Investigator Hoard testified that the photographs he provided were of a woman employed as a corrections officer at the Sheriff's Office. In response to the photographs, Logsdon said that she was "a little cutie" and asked if she was "[i]nto older guys." He also commented, "[Y]ou look much older than you are." Logsdon told her that he would like to "teach her how to" have sex. Logsdon asked, "Any of your cheer friends chat?" "[K]elli_luvs2cheer" responded that her thirteen-year-old friend Alexis, "softball_alex14," also chatted online.

In the course of the online conversation, Logsdon provided "kelli_luvs2cheer" with a phone number. Investigator Hoard testified that he used a device to disguise his voice as that of a girl and called Logsdon. A recording of the call was played for the jury and admitted as an exhibit. They discussed, among other things, the possibility of meeting in person and her going to Logsdon's house on the pretense of babysitting. "[K]elli_luvs2cheer" expressed fear about her mother discovering her talking with Logsdon. Following the phone call and further online conversation, "kelli_luvs2cheer" told Logsdon that she had to leave because her "[m]om just pulled in."

Investigator Hoard testified that Logsdon and "kelli_luvs2cheer" had another online conversation on December 1. A transcript of the conversation was read into the record and admitted as an exhibit. In that conversation, Logsdon referred to her "young little body." They again discussed the possibility of meeting. Logsdon said, "Would love to meet. Figuring out when and where is the issue. Remember, I am married and you can't drive."

Investigator Hoard testified that he later interviewed Logsdon, a recording of which was played for the jury and admitted as an exhibit at trial. Logsdon, who did not know at the

time of the interview that Hoard had been acting as "kelli_luvs2cheer," acknowledged that he was "tenn_hubby." He explained why he continued talking with "kelli_luvs2cheer" after she informed him of her age by saying that he believed she was older and was merely pretending to be younger. He noted that "Kelli" looked older, and he said that people do not admit their real age in such online chat rooms. Regarding conversations he had with "Alex," he said he quit talking to her when he saw photographs of her because she appeared to actually be thirteen years old.

On cross-examination, Investigator Hoard testified that the chat room in which he conversed with Logsdon was classified under "romance" on Yahoo. In order to create an account to participate in such chat rooms on Yahoo at the time, one had to verify that he or she was eighteen years old. He said that he usually provided an age of ninety-nine years when he created undercover personas like "kelli_luvs2cheer." Investigator Hoard testified that fifty to sixty percent of contacts that he had in that chat room with other people were of a sexual nature, and they were often explicit.

On redirect examination, Hoard testified that one does not have to read the terms of use to create an account, and that they do not appear on the screen unless the person creating the account clicks a button requesting that they appear. He said that the chat room was not one that had an "adult theme," unlike other Yahoo chat rooms that were available. Investigator Hoard testified that it was "very common" for someone in the chat room to discontinue contact once the person learned his undercover persona's age.

Special Investigator Justin McClure testified that he acted undercover as "softball_alex14." Logsdon contacted "softball_alex14" on November 21, 2008, by sending an "instant message." A transcript of the conversation was read into the record and admitted as an exhibit. Logsdon promptly asked her age, and "softball_alex14" responded that she was thirteen. She informed him that she was home schooled. Logsdon requested photographs and asked whether "softball_alex14" had a camera. She responded that her mother, who was at work at the time, had the camera. Logsdon suggested that she have her mother or father take a photograph of her so that Logsdon could see her. Logsdon asked her if she was "[i]nto older guys," and he informed her that he was "into younger girls." When Logsdon inquired about her breasts, "softball_alex14" said, "I don't have very big breasts. I'm still young." The two discussed the possibility of meeting at a shopping mall, and Logsdon asked, "How are you going to get there?" "[S]oftball_alex14" responded, "I can get my neighbor to take me. I will just call Mom and let her know where I am." After Logsdon sent nude photographs of himself, the following exchange occurred:

["softball_alex14"]: Whoa, that was a bit much.

[Logsdon]: You like?  You wanted to see what I look like.

["softball_alex14"]: You know I'm just 13, right?

[Logsdon]: And?  Want to call me?

. . . .

[Logsdon]: You going to tell on me?

["softball_alex14"]: No, 'cause I don't want to get in trouble.

[Logsdon]: What would your mom think of you wanting to [perform oral sex on me]?

Logsdon suggested that "softball_alex14" babysit for him.  "[S]oftball_alex14" asked Logsdon whether he had ever been with a girl as young as she was.  Logsdon responded that he had sex with a fourteen-year-old when he was twenty-four.  He described the sexual acts they performed and added, "She was probably the best I ever had."  He said that he believed she was eighteen and learned her real age only after having sex with her.  Logsdon suggested that "softball_alex14" call the mother of "kelli_luvs2cheer" to arrange a sleepover.  During the conversation, "softball_alex14" made references to her sexual inexperience.  For example, she said, "You seem like quite the expert. . . . I don't know much."

Investigator McClure testified that Logsdon contacted "softball_alex14" online again on December 1, 2008.  A transcript of that conversation was also read into the record and admitted as an exhibit.  In the conversation, "softball_alex14" made several references to her mother's controlling her behavior, such as taking a camera away from her, preventing her from creating a My Space page, and checking her computer activity.  Logsdon suggested that "softball_alex14" call him, and Investigator McClure did so, disguising his voice to sound like a young girl's.  A recording of the call was played for the jury and admitted as an exhibit.  During the phone call, Logsdon asked if it excited her to know that an "older guy" was interested in her.

On cross-examination, Investigator McClure acknowledged that he provided false information to others when working undercover online.  He testified that people are initially unable to verify any information that others provide in online communications.

Following trial, the jury convicted Logsdon as charged.  This timely appeal followed.

**Analysis.** Logsdon argues that the evidence introduced at trial is insufficient to support his convictions. Specifically, he asserts that the State failed to prove that Logsdon reasonably believed that he was communicating with minors, an element of all the charged offenses. The State argues that the evidence was sufficient to support the convictions. We agree with the State.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt." Guilt may be found beyond a reasonable doubt in a case where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)). The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and must reconcile all conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). When reviewing issues regarding the sufficiency of the evidence, this court shall not "reweigh or reevaluate the evidence." Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). This court has often stated that "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997) (citation omitted). A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citing State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)).

When the State offers proof of guilt based on circumstantial evidence, the jury decides how much weight to give to circumstantial evidence, and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." Marable v. State, 313 S.W.2d 451, 457 (Tenn. 1958) (internal quotation and citation omitted)). This court may not substitute its inferences for those drawn by the trier of fact in cases involving circumstantial evidence. State v. Lewter, 313 S.W.3d 745, 748 (Tenn. 2010) (citing Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956)). We note that the standard of review "'is the same whether

the conviction is based upon direct or circumstantial evidence.'" State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009) (quoting State v. Sutton, 166 S.W.3d 686, 689 (Tenn. 2005)).

Convictions of solicitation of a minor to commit especially aggravated sexual exploitation of a minor and aggravated statutory rape, as relevant here, require the State to prove that the defendant "solicit[ed] a law enforcement officer posing as a minor, and whom the person making the solicitation reasonably believe[d] to be less than eighteen years of age." T.C.A. § 39-13-528(a) (2006). Similarly, a conviction for solicitation of the sexual exploitation of a minor requires the State to prove that the defendant "[d]isplay[ed] to a law enforcement officer posing as a minor, and whom the person making the display reasonably believe[d] to be less than eighteen years of age," particular materials. Id. § 39-13-529(b)(3).

Logsdon asserts that the proof at trial did not establish beyond a reasonable doubt that he reasonably believed the people with whom he was communicating were minors. He argues that the context of the adult chat room made it unreasonable to believe that the people were minors. He asserts that one cannot reasonably rely on the representations of others in such chat rooms because it is "common and accepted for people to lie and to conceal their identities." Additionally, he emphasizes the adult nature of the chat room and the conversations there, maintaining that "[h]e wasn't out seeking places where children or underage teenagers chat." He further supports his contention by referring to the photographs Investigator Hoard sent of "kelli_luvs2cheer" and asserting that "it is visually obvious from them that they are photos of an adult and are not photos of a 14-year-old."

Viewed in the light most favorable to the State, the evidence showed that both "kelli_luvs2cheer" and "softball_alex14" promptly identified themselves as fourteen and thirteen, respectively. In the online conversations, Logsdon at times referred to them as "little" and "young." He mentioned their parents and the possibility of getting in trouble with them. He acknowledged that they were too young to drive. The conversations referred to their sexual inexperience. He suggested that they babysit for him. Additionally, the jury listened to the phone calls with Logsdon in which the investigators sounded like girls. Logsdon spoke to them in a tone that adults typically reserve for conversations with children, and the jury could compare that tone with the one he used during his police interview. Additionally, the jury viewed the photographs that Investigator Hoard sent of "kelli_luvs2cheer." The photos depicted a female in childish settings, such as on a bed surrounded by stuffed animals and in a room with brightly colored wall posters. Furthermore, the jury also heard that Logsdon told "softball_alex14" that a prior sexual experience with a fourteen-year-old was "the best [he] ever had." We conclude that this evidence was sufficient to support the jury's finding that Logsdon reasonably believed the officers were minors. Although Logsdon contests what these facts demonstrated relative to

-6-

Logsdon's belief, the inferences to be drawn from the evidence was a factual question in the purview of the jury, and this court will not substitute its inferences for those drawn by the jury. Lewter, 313 S.W.3d at 748. Consequently, Logsdon is not entitled to relief.

## CONCLUSION

Upon review, we affirm the judgments of the trial court.

_____

CAMILLE R. McMULLEN, JUDGE