IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 6, 2013

## STATE OF TENNESSEE v. FRANKLIN D. MOORE

**Appeal from the Circuit Court for Madison County**
**No. 12170     Donald H. Allen, Judge**

_____

**No. W2012-02439-CCA-R3-CD  - Filed August 27, 2013**
_____

The Defendant-Appellant, Franklin D. Moore, was convicted by a Madison County jury of driving under the influence (DUI), fourth offense, and sentenced to two years in the Tennessee Department of Correction. The sole issue presented for our review is whether the evidence is sufficient to support the conviction. Upon our review, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Gregory D. Gookin, Assistant Public Defender, Jackson, Tennessee, for the Defendant-Appellant, Franklin D. Moore.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General; James G. Woodall, District Attorney General; and Anna Banks Cash, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

On November 19, 2011, Defendant-Appellant Moore was involved in a motorcycle accident in Madison County, Tennessee. A responding deputy observed that Moore had an odor of alcohol, slurred speech, and was unsteady on his feet. After advising the deputy that he had been drinking and was "too drunk" to perform field sobriety tests, Moore was arrested for driving while under the influence (DUI). The following proof was adduced at trial.

Shortly after 9:00 p.m. on November 19, 2011, Deputy Mark Taylor of the Madison County Sheriff's Department responded to a single-vehicle accident on Caldwell Road in Madison County, Tennessee. Deputy Taylor testified that when he arrived at the scene, Moore was standing by a motorcycle that had wrecked into a ditch at a curve in the road. It

had apparently gone straight at the curve and hit an earth embankment. During his investigation, Deputy Taylor observed the following:

> I asked [Moore] what happened and I started investigating the wreck and he told me he had been at Sadie Lou's. It's a bar there in the Bemis area. [Moore] told me he had been there for a benefit for another motorcyclist who had been in a wreck a week or two prior to that. I noticed he had an odor of alcohol emitting from his person when he spoke. He was slightly unsteady on his feet. His speech was a little slurred. I immediately thought to myself that he was under the influence of something.

Deputy Taylor testified that Moore told him that "he had more than six beers" but did not recall whether Moore told him when he had consumed them. Deputy Taylor did not observe Moore to have any visible injuries. He further testified that Moore refused treatment from emergency medical services and declined the offer to be transported to the emergency room. When Deputy Taylor attempted to administer field sobriety tests, Moore said that he was "too drunk." Upon arresting Moore, Deputy Taylor used a form to advise him of the implied consent law.

Deputy Taylor explained that the form requested Moore to submit to a chemical test to determine the alcohol or drug content of his blood. It further advised Moore that he could refuse to submit to the test, though such refusal may result in additional imprisonment and a suspension of the individual's driver's license. Initially, Moore verbally agreed to submit to a blood test. While en route to Jackson-Madison County General Hospital, Deputy Taylor picked up Deputy Logan Copley, who was in training, to assist him. Deputy Taylor testified that after arriving at the emergency room, Moore changed his mind and refused to take the blood test. Moore was then transported to the Criminal Justice Complex (CJC) where he signed the implied consent form indicating his refusal.

Deputy Taylor believed Moore was intoxicated based on the following observations: (1) the smell of alcohol on his breath; (2) he was unsteady on his feet; (3) an admission that he had been drinking at a bar; and (4) slurred speech. Deputy Taylor testified that he arrested Moore after he said he was "too drunk" to perform the field sobriety tests. Deputy Taylor said that Moore was cooperative during arrest.

On cross-examination, Deputy Taylor acknowledged that "[Moore] said he had fallen asleep." He also acknowledged that he was not a medical care professional and that it was possible that an individual could have undetected internal injuries or may be physically impaired or unable to complete field sobriety tests.

Deputy Logan Copley of the Madison County Sheriff's Department testified that he was in training and rode in the patrol car with Deputy Taylor and Moore to the emergency

room. Deputy Copley corroborated the testimony of Deputy Taylor regarding Moore's refusal to submit to a blood test upon arrival at the hospital.

Defendant-Appellant Moore testified that he had been in Mobile, Alabama the day before the arrest. He was seeking construction work there but he normally lived in Jackson, Tennessee. When work was unavailable in Mobile, Moore drove overnight to return to Jackson to participate in a benefit he had helped organize. Moore said the benefit involved a fish fry and visits to six local bars throughout the day. The purpose was to raise money for the family of a friend who had died in a motorcycle accident. Moore said he had slept for "roughly about an hour or so" the night before. He left Mobile at 9:00 p.m. and arrived in Jackson around 5:00 a.m. on the day of the arrest. The tent set-up and preparations for the fish fry began at 6:00 a.m., and he helped cook fish from 10:00 a.m. to 1:00 p.m. From 1:00 p.m. to approximately 9:00 p.m., he participated in a charity event in which he drank a beer and socialized for an hour each at six different bars.

Defendant-Appellant Moore said that he was on his way home when the accident occurred. He was "dead tired" and was about two miles from his residence when he "dozed off for a split second." He testified that he hit his head and was knocked out, but was responsive by the time Deputy Taylor arrived. He did not recall going over a form with Deputy Taylor nor was he aware of the papers he signed at the jail. He testified that the accident caused five broken ribs and "crushed [his] left knee." He also experienced whiplash and a concussion. He explained that he suffered memory loss as a result of the accident. He specifically recalled the following:

> When I hit my head, I don't remember certain things. I mean, I had a helmet on and I still had a big knot and plus I had a concussion. I remember [Deputy Taylor] wanting to do [sobriety tests] and I said that I can't meaning physically I was not able . . . I don't know what he wrote down, but my knee was crushed. I couldn't walk. It's all documented.

Defendant-Appellant Moore said that due to his concussion, he did not recall refusing emergency medical treatment. He further testified that the first time he had been to the hospital that night was after he had been booked at the jail. When he took off his shirt to change into a jumpsuit, his whole side "just stuck out and it was black." Upon seeing the bruises, the bailiff had him transported to the emergency room where the staff conducted tests determining "the concussion and everything." He testified that the doctor wrote down "bruised ribs" on the night of the arrest but that a different doctor the following Monday characterized his ribs as "fractured." Finally, he said that he had not been to a doctor since the accident because he was unemployed and did not have health insurance.

Lieutenant Harold Petty, Assistant Administrator at the Criminal Justice Complex, testified as a rebuttal witness for the State. Based on the records in the booking logbook,

Lieutenant Petty said that Moore was brought into the jail at 10:18 p.m. on November 19, 2011, by Deputy Copley. In the early morning at 2:15 a.m. on November 20, Moore was taken to the emergency room where he remained until returning to the jail at 5:30 a.m.

Based on the above proof, the jury convicted Defendant-Appellant Moore of DUI. He entered a guilty plea to the enhancement count charging him as a prior offender with three prior DUI convictions in Madison County. As a Range I, standard offender convicted of a Class E felony, Moore received a two-year sentence. Following the denial of his motion for a new trial, Moore filed this timely appeal.

## ANALYSIS

**I. Sufficiency of the Evidence.** On appeal, Moore contends that the evidence is insufficient to support his conviction for DUI. He asserts that the motorcycle accident was due to fatigue rather than intoxication. He argues that he consumed approximately six beers over the course of eight to nine hours. Furthermore, he claims that it was pain from his physical injuries, and not inebriation, that prevented him from performing field sobriety tests. The State argues that the evidence, when viewed in the light most favorable to the State, was sufficient to find Moore guilty of DUI. We conclude that the evidence is sufficient to sustain Moore's conviction.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt." Guilt may be found beyond a reasonable doubt in a case where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)). The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). When reviewing issues regarding the sufficiency of the evidence, this court shall not "reweigh or reevaluate the evidence." Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). This court has often stated that "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." Bland, 958 S.W.2d at 659. A guilty verdict also

"removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citing State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)).

"In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence." State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (citing Duchac v. State, 505 S.W.2d 237, 241 (Tenn. 1973); Marable v. State, 313 S.W.2d 451, 456-58 (Tenn. 1958)). However, "[t]he jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting Marable, 313 S.W.2d at 457). This court may not substitute its inferences for those drawn by the trier of fact in cases involving circumstantial evidence. State v. Sisk, 343 S.W.3d 60, 65 (Tenn. 2011) (citing State v. Lewter, 313 S.W.3d 745, 748 (Tenn. 2010)). We note that the standard of review "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Hanson, 279 S.W.3d 265, 275 (quoting State v. Sutton, 166 S.W.3d 686, 689 (Tenn. 2005)); State v. Carruthers, 35 S.W.3d 516, 557 (Tenn. 2000). The court in Dorantes specifically adopted the standard for circumstantial evidence established by the United States Supreme Court in Holland:

> "Circumstantial evidence . . . is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more."

Dorantes, 331 S.W.3d at 380 (quoting Holland v. United States, 348 U.S. 121, 140 (1954)).

We conclude that the evidence, viewed in the light most favorable to the State, is sufficient to support Moore's conviction for DUI. The State had to prove beyond a reasonable doubt that Moore drove or was "in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys . . . while . . . [u]nder the influence of any intoxicant[.]" T.C.A. § 55-10-401(a)(1) (2008). Although Moore argues that he was suffering from fatigue rather than inebriation, this court has held that in DUI cases, a police officer's testimony, by itself, is sufficient evidence to convict a defendant of DUI. See State v. Vasser, 870 S.W.2d 543, 544 (Tenn. Crim. App.1993) (stating that the State did not need more than the deputy's testimony to prove its DUI case). Here, Deputy Taylor testified that when he arrived at the scene of the

accident, he saw Moore standing next to a wrecked motorcycle in a ditch on Caldwell Road. He observed that Moore was unsteady on his feet, smelled of alcohol, and had slurred speech. When Deputy Taylor asked him what had happened, Moore said he had been at a local bar and that "he had more than six beers." Moore was unable to follow instructions when Deputy Taylor attempted to administer field sobriety tests. Deputy Taylor arrested Moore after he said he was "too drunk" to perform the tests. Deputy Taylor said that he did not observe any injuries to Moore and that Moore initially declined medical treatment. In our view, the jury simply rejected Moore's explanation of his behavior, as was their prerogative, and accredited the testimony of Deputy Moore. Accordingly, we conclude that the evidence was sufficient to sustain the conviction for DUI, fourth offense.

## CONCLUSION

We conclude the evidence is sufficient to sustain the conviction for driving under the influence of an intoxicant, fourth offense. The judgment of the trial court is affirmed.

_____

CAMILLE R. McMULLEN, JUDGE