# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
February 12, 2010 Session Heard at Murfreesboro[1]

## STATE OF TENNESSEE v. JAMES RAE LEWTER

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Lincoln County**
**No. S0600095       Robert Crigler, Judge**

---

**No. M2007-02723-SC-R11-CD - Filed June 4, 2010**

---

A jury convicted the defendant of burglary and theft in connection with the break-in of a dental office. The Court of Criminal Appeals reversed the convictions, finding that the evidence, which included a white shirt bearing the defendant's DNA found at the crime scene, was insufficient to support the jury's verdict. Upon further review by this Court, we hold that the evidence was sufficient to support a reasonable inference of guilt beyond a reasonable doubt. Accordingly, we reverse the judgment of the Court of Criminal Appeals and remand for further proceedings.

### Tenn. R. App. 11; Judgment of the Court of Criminal Appeals Reversed; Case Remanded

SHARON G. LEE, J., delivered the opinion of the Court, in which JANICE M. HOLDER, C.J., CORNELIA A. CLARK, GARY R. WADE, AND WILLIAM C. KOCH, JR., JJ., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Cameron L. Hyder and Elizabeth Bingham Marney, Assistants Attorney General; Charles Crawford, District Attorney General; and Ann L. Filer and Hollyn Hewgley, Assistants District Attorney General, for the appellant, State of Tennessee.

S. Craig Moore, Fayetteville, Tennessee (on appeal) and A. Jackson Dearing, III and Dorothy Buck, Shelbyville, Tennessee (at trial) for the appellee, James Rae Lewter.

---

[1] Oral argument was heard in this case on Feb. 12, 2010, in Murfreesboro, Rutherford County, Tennessee, as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

**OPINION**

**Background**

On the morning of January 31, 2006, officers of the Fayetteville Police Department, responding to dispatches regarding a possible burglary and theft at Dr. William Hamilton's dental office, arrived to find a window in the office waiting room had been broken. Shards of glass were found inside and outside of the building under the window. The office was in general disarray with papers scattered about, file and storage cabinet drawers open, and items missing. A large, heavy table had been moved from the center of the room to a wall. An extra-large white shirt was found draped over a stairway railing near the broken window. A blood-stained towel was discovered in a chair in the reception area, and blood stains were also found on a box of latex gloves in a restroom. Dr. Hamilton confirmed that various items were missing from the office, including furniture, pictures, computer equipment, office supplies, and rugs, one of which measured twelve feet by fifteen feet. The fair market value of all of the missing property was established to be more than $1,000.

The police dusted the crime scene for fingerprints, and the white shirt and blood-stained towel and latex glove box found at the scene were sent to the police department crime laboratory for testing. DNA extracted from the blood on the box and towel matched the profile of DNA extracted from a blood sample obtained from Dinah Lynne Justice. DNA extracted from skin cells on the shirt matched the profile of DNA extracted from a blood sample obtained from the defendant, James Rae Lewter. No identifiable fingerprints found in the office matched the fingerprints of either Ms. Justice or the defendant.

Ms. Justice claimed to have no memory of the break-in due to intoxication, but pleaded guilty to burglary in violation of Tennessee Code Annotated section 39-14-402[2] and

---

[2] Tennessee Code Annotated section 39-14-402 (2006) provides in part as follows:

> (a) A person commits burglary who, without the effective consent of the property owner:
> (1) Enters a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a felony, theft or assault;
> (2) Remains concealed, with the intent to commit a felony, theft or assault, in a building; [or]
> (3) Enters a building and commits or attempts to commit a felony, theft or assault;
>
> . . .

(continued...)

theft in violation of Tennessee Code Annotated section 39-14-103.[3] The defendant was indicted and convicted of the same two offenses, and was sentenced to eight years incarceration for each offense, to be served concurrently.

The defendant appealed. The Court of Criminal Appeals reversed and vacated the defendant's convictions and dismissed the indictment. The court reasoned that the presence at the crime scene of a white shirt containing skin cell DNA matching the defendant's DNA did not prove he was present at the time of the burglary and theft. The court concluded that "there was no other evidence, direct or circumstantial, to make the presence of the shirt at the dental office incriminating, [and that] the State failed to provide sufficient evidence to support Lewter's convictions." We granted the State's application for permission to appeal.

**Analysis**

The issue we address in this case is whether the evidence was sufficient to support the defendant's convictions. We begin by noting that a guilty verdict replaces the presumption that a defendant is innocent with a presumption of guilt and accordingly, on appeal, the defendant bears the burden of proving that the evidence was insufficient to sustain the verdict of guilty. State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009) (citing State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992)). The firmly-established standard governing our review requires that "'[w]hen considering a sufficiency of the evidence question on appeal, the State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom.'" Hanson, 279 S.W.3d at 274 (quoting State v. Vasques, 221 S.W.3d 514, 521 (Tenn. 2007)). All questions as to the credibility of trial witnesses, the weight and value of the evidence, and issues of fact raised by the evidence are resolved by the trier of fact, not this Court, and we may not re-weigh or re-evaluate the evidence. State v. Evans, 108 S.W.3d 231, 236 (Tenn. 2003); see also State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) ("The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact."). The standard requires that we consider "whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," Hanson, 279 S.W.3d at 274-75, and this standard applies whether the conviction was based upon direct evidence or circumstantial

---

[2](...continued)
   (c) Burglary under subdivision (a)(1),(2) or (3) is a Class D felony.

[3] Tennessee Code Annotated section 39-14-103 (2006) provides that "[a] person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tennessee Code Annotated section 39-14-105(3) (2006) further provides that theft of property with a value of $1,000 or more is a Class D felony.

evidence. State v. Sutton, 166 S.W.3d 686, 689 (Tenn. 2005) (citing State v. Carruthers, 35 S.W.3d 516, 557 (Tenn. 2000)).

At issue in this case is the identity of the perpetrator of the break-in of the dental office. The identity of the perpetrator is an essential element of all crimes and may be established solely on the basis of circumstantial evidence. State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006). Where a defendant is convicted solely on circumstantial evidence, the facts and circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant . . . and must be so closely interwoven and connected that the finger of guilt is pointed unerringly at the defendant and the defendant alone." State v. Crawford, 470 S.W.2d 610, 612-13 (Tenn. 1971). However, our review of circumstantial evidence is subject to the same strictures noted above pertinent to the standard of review with respect to evidence in general, and accordingly, the jury decides the weight to be assigned circumstantial evidence and "'[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting Marable v. State, 313 S.W.2d 451, 457 (Tenn. 1958)). This Court may not substitute inferences it may draw from such evidence for those inferences that were drawn by the jury. See Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956).

Relying on the appropriate deferential standard of review, we have carefully considered all the evidence presented to the jury in this case. While there is no direct evidence linking the defendant to the crime, there is ample circumstantial evidence to support the convictions.

First, the white shirt found at the dental office on the morning after the break-in contains skin cell DNA matching the DNA of the defendant. Ms. Justice, who has pleaded guilty to the offenses of burglary and theft from the dental office, testified that she had never taken or worn any shirt belonging to the defendant and that he had never left any clothes at her apartment. The jury could have reasonably inferred that the defendant left his shirt on the railing during the commission of the crimes.

Next, we consider the testimony before the jury indicating that more than one person was involved in the commission of the crimes. As we have noted, on the morning after the break-in, a large table, which before the break-in had been in the center of the room, was found pushed against a wall in the office waiting room. Dr. Hamilton testified that this table was "pretty heavy" and that it could not have been moved from its original position to its new position fifteen feet away without the effort of two people. One of the rugs stolen from the office measured twelve feet by fifteen feet, and Dr. Hamilton confirmed that one person could not have moved this rug. And finally, Dr. Hamilton provided a listing of the numerous

items that were stolen, including three rugs, three wooden chairs, a computer and monitor, a microwave oven, a bookcase drawer, a large container plant, and various wall hangings. In addition to Dr. Hamilton's testimony describing the items moved and stolen, Ms. Justice's testimony that she is five feet five inches tall and weighs approximately 120 pounds, indicates that she is not an unusually large person and would be incapable of moving heavy objects without assistance. In addition, the number and size of the items stolen indicate that a truck or similar vehicle would have been required to transport them. Ms. Justice did not have a truck, but the defendant did. The jury could have reasonably inferred from this testimony of Dr. Hamilton and Ms. Justice that more than one individual was involved in the break-in of Dr. Hamilton's office and that the perpetrators used a pick up truck or some similar vehicle to remove the property that was stolen.

Finally, we note the relationship between Ms. Justice and the defendant. Ms. Justice, an admitted alcoholic, met the defendant at an Alcoholics Anonymous meeting. In January of 2006, she had relapsed and was drinking regularly. On the evening the crime occurred, Ms. Justice was in a "black-out," a condition from which she infrequently suffers as a result of her alcoholism, and she attested that until she was approached by the police about the break-in, she "knew absolutely nothing about it [and] . . . had no recollection whatsoever of it." She only remembered walking home alone on a roadway between the dental office and her apartment, which was located about one-third of a mile from the dental office.

At the time of the break-in, Ms. Justice was living in an apartment in a house owned by Dr. Stanley Pace. Dr. Pace had hired her and the defendant to work both at that house and at Dr. Pace's own residence, and she and the defendant had been working at the residence during the week before January 30, 2006.[4] She testified that during the month of January she and the defendant, using a truck in the defendant's possession, moved rock and gravel. In addition to having an ongoing working relationship with the defendant, Ms. Justice further testified that when she drank, she either drank alone or with the defendant and that she and the defendant had been drinking together regularly at the time of the break-in, stating "I was drinking almost every evening with him. This went on about two weeks." Ms. Justice further admitted that she and the defendant had been sexually intimate in January of 2006 and that the defendant had stayed at her apartment overnight on a couple of occasions during that time. The jury could reasonably conclude from Ms. Justice's testimony that the defendant was involved in a close working and social relationship with Ms. Justice, a self-confessed perpetrator of the burglary and theft, at the time those crimes were committed.

---

[4] Fayetteville police department detective Joel Massey testified at trial that his investigation revealed that the defendant and Ms. Justice did landscaping work together prior to January 30.

Applying the analytical framework established by our prior cases, we determine that the combination of all the circumstantial evidence in this case – the shirt that the defendant had worn that was found at the crime scene; the nature of objects moved during the commission of the crime, indicating that at least two persons committed the crime; and the contemporaneous ongoing and occasionally intimate social relationship that existed between the defendant and one self-confessed perpetrator of the crime – is sufficient, when taken in a light most favorable to the State, to support the inference that the defendant committed the crimes.

In setting forth these factual circumstances, we defer, consistent with the governing standard of review, to the jury's acceptance of the proof of these circumstances and rejection of evidence that conflicted with the circumstances proved by the State. In this regard, we acknowledge that there was conflicting evidence presented by the defendant. The defendant's landlord, Joanne Riddle, and her friend, Anita Hill, attested that the defendant was at Ms. Riddle's house on the evening of January 30, 2006, and, therefore, he could not have been present during the break-in of Dr. Hamilton's office. Ms. Hill testified that the defendant was at Ms. Riddle's house when Ms. Hill left at sometime around 11:00 p.m. Ms. Hill did not account for his whereabouts after that time. Similarly, Ms. Riddle attested that she observed the defendant asleep on her couch when she went to bed shortly after 11:00 p.m. Ms. Riddle did not state that she saw the defendant again that evening; however, she stated that he could not have left the house without her knowing because she set her burglar alarm and he did not know the code. It was within the jury's authority to dismiss the testimony of both of these witnesses as not credible, and we must assume that the jury did not believe this testimony to the extent that it was irreconcilable with the result the jury reached. As we have stated, the credibility of trial witnesses and the weight and value of the evidence is determined by the trier of fact and not subject to re-evaluation by this Court. Further, it was not established by the evidence at what time the break-in occurred or, specifically, that the break-in occurred before 11:00 p.m. Therefore, if the jury rejected Ms. Riddle's testimony that the defendant could not have left her house after she went to bed shortly after 11:00 p.m., the testimony of neither of these witnesses had sufficient weight to support the defendant's alibi that the defendant was at Ms. Riddle's house when the break-in took place and to overcome the other evidence supporting an inference of guilt.

The defendant also argues that it is likely that the shirt was not being worn at the time of the crime but rather was used to protect the hand of the person who broke the window in gaining access to the office. In support of this argument, the defendant notes that the shirt's "dirty and nasty" condition indicates that it would not have been worn; that it would be odd for a perpetrator to take off his or her shirt during the course of a burglary, particularly on a winter night in January; that it would be irrational to wear a white shirt to commit a burglary at night; and that the broken glass found beneath the shirt indicates that the glass

was shaken out of the shirt after it was used to break the window. The defendant also references the testimony of Tennessee Bureau of Investigation special agent forensic scientist Bradley Everett who stated that it was not possible to discern from the DNA retrieved from the defendant's skin cells found on the shirt when the defendant last wore the shirt and that the skin cells could have been there for years, given the right conditions of temperature and humidity and thus, the shirt need not have been worn at the time of the crime. The defendant asserts that the evidence does not prove beyond a reasonable doubt that the defendant was at the crime scene and does not exclude every other reasonable theory except that of guilt. The defendant asserts that the evidence alternatively supports the reasonable theory that Ms. Justice "went to the dental office and committed the burglary using the shirt – which she obtained while [d]efendant was either at her residence (working, sleeping, or in sexual relations with her) or working elsewhere with her – to break the window and gain access." The defendant further contends that even if the evidence supports the conclusion that Ms. Justice had an accomplice in the crime, it does not prove beyond a reasonable doubt that the defendant was her accomplice.

We do not agree with the defendant's assertion that the evidence supports this proposed alternative theory because, as we have noted, Ms. Justice specifically testified that she had never taken any shirt worn by the defendant. Again, questions regarding witness credibility are resolved by the jury. Accepting this testimony of Ms. Justice, the jury could have reasonably dismissed the theory that the white shirt was brought to the office by Ms. Justice, not the defendant. Having dismissed this theory, it was reasonable for the jury to infer that the shirt was in Dr. Hamilton's office because the defendant himself brought the shirt to the office when he participated in the break-in. Whether the defendant wore the shirt or carried it in his hand at that time is of no consequence.

After reviewing the evidence in the light most favorable to the State, as we are bound to do, it is our determination that the evidence was sufficient to support the jury's finding that the defendant was guilty beyond a reasonable doubt and the defendant has failed to meet his burden in proving otherwise. Accordingly, the judgment of the Court of Criminal Appeals is reversed, and the case is remanded to the intermediate court for consideration of the two remaining issues presented to that court for review.[5]

---

[5] These issues are 1) whether the trial court imposed an excessive sentence of eight years in violation of State v. Gomez, 239 S.W.3d 733, 740 (Tenn. 2007) and 2) whether the State engaged in misconduct during closing arguments. State v. Lewter, M2007-02723-CCA-R3-CD, 2009 WL 1076716 at *1 (Tenn. Crim. App. April 9, 2009).

**Conclusion**

For the reasons stated herein, the judgment of the Court of Criminal Appeals is reversed, and the case is remanded to that court for further action. It appearing that the defendant is indigent, the costs of appeal are taxed to the State.

_____
SHARON G. LEE, JUSTICE