IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 6, 2015

**STATE OF TENNESSEE v. AUSTIN DRUMMOND**

**Appeal from the Circuit Court for Madison County**
**No. 14232      Roy B. Morgan, Jr., Judge**

_____

**No. W2014-02553-CCA-R3-CD  -  Filed May 25, 2016**

_____

Defendant, Austin Drummond, was indicted by the Madison County Grand Jury with one count of aggravated robbery.  Following a jury trial, Defendant was convicted of the offense.  The trial court sentenced Defendant to serve ten years in the Department of Correction.  In this appeal as of right, Defendant asserts that the evidence was insufficient to support his conviction and that his sentence is excessive.  Having carefully reviewed the record before us and the briefs of the parties, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the Court, in which CAMILLE R. MCMULLEN and ROBERT L. HOLLOWAY, JR., JJ., joined.

Kortney D. Simmons, Jackson, Tennessee, for the Appellant, Austin Drummond.

Herbert H. Slatery III, Attorney General and Reporter; Tracy L. Alcock, Assistant Attorney General, James G. (Jerry) Woodall, District Attorney General; and Jody Pickens, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

*Background*

On July 31, 2013, Candice Barham was working the late shift as the First Assistant Manager of the Circle K convenience store located on the corner of Highland and University Streets in Jackson.  At approximately 12:30 a.m., a white male later identified as Defendant entered the store.  He was wearing a hat and a black oversized t-shirt with a white graphic on the front of the cartoon character "Stewie" from the television show

*Family Guy*.  Ms. Barham thought that Defendant's behavior was suspicious as he walked down every aisle of the store and watched her.  She explained that at that time of night, customers usually "know what they came for.  They come, they get what they were going to get and they leave."  Ms. Barham asked Defendant if she could help him find anything, and he replied, "No, I'm just looking.  I got the munchies."  She testified that Defendant was in the store for a total of three to four minutes.

When Ms. Barham turned to look out the window into the parking lot, Defendant walked behind the register. When she turned back around, he was standing within two feet of her.  Defendant then pointed a pistol at Ms. Barham and ordered her to "[o]pen the drawer.  I'm not fu - - - - g playing with you.  Open the drawer."  Ms. Barham testified that at that point, she felt threatened and feared for her life.  She opened the cash register and stepped back.  Defendant reached into the drawer and took the bills that were in the till.  He also lifted the till to see if there was any money underneath, but it was empty.  Defendant appeared to be upset that there was no additional cash and said, "Man, ya'll tripping."  He repeated the statement three times as he left the store.  Ms. Barham testified that Defendant took a total of forty-four dollars out of the register.  As the First Assistant Manager, it was her responsibility to exercise custody and control over the money.

After Defendant left, Ms. Barham locked the doors and called police.  As she was locking the door and on the phone with the 911 dispatcher, Ms. Barham saw two police officers, who were regular customers, pull into the parking lot.   Ms. Barham motioned to the officers that there had been a robbery.  She told them that Defendant ran past the officers after he exited the store. The officers got back into their patrol car and drove after Defendant.  Ms. Barham later told police that the robber was a white male, twenty to thirty years old, wearing black clothing.  She was unable to identify Defendant from a photographic lineup because his "picture looked different."  Ms. Barham identified Defendant in the courtroom as the man who robbed her on July 31, 2013.  She explained that it was different seeing Defendant in person as opposed to seeing the photograph of him.

Ms. Barham identified a video recording of the robbery from the Circle K's surveillance system.  She identified Defendant several times on the video.  The video showed Defendant entering the Circle K at 12:32 a.m. and walking through the candy isle.  It also showed Defendant robbing Ms. Barham and then exiting the store at 12:35 a.m.  Ms. Barham identified Defendant in the video holding a pistol in his right hand as he approached Ms. Barham.

Officer Joshua Vincent of the Jackson Police Department testified that he and Officer Mullins pulled into the Circle K store on July 31, 2013, at approximately 12:30 to

2

12:35 a.m. When they arrived Officer Vincent saw a white male, approximately six-feet tall weighing 150-170 pounds, and wearing dark clothing and a baseball hat, running out of the store. He also saw Ms. Barham waving at the officers. Officer Vincent testified that he and Officer Mullins approached the locked front door of the store. Ms. Barham informed them that the man who ran past them had robbed her. The officers immediately issued a BOLO (be on the lookout) for the man. They searched for the person for twenty to thirty minutes but could not find him.

Officer Joseph King of the Jackson Police Department testified that he was the crime scene technician dispatched to the robbery scene at the Circle K. He spoke with Ms. Barham who told him that Defendant touched the cash register and the front door. Officer King testified that he lifted a fingerprint from the left front door of the store, and he also lifted three fingerprints from inside the cash register. He drew a diagram of the register and marked the area where the prints were lifted.

Investigator Aubrey Richardson of the Jackson Police Department, Major Case Unit, testified that he investigated the robbery that occurred on July 31, 2013. He also asked William Roane, a latent fingerprint examiner with the Jackson Police Department, to assist with the case. Investigator Richardson was given the names of Shawn Bruin and Defendant as possible suspects in the robbery, and he asked Mr. Roane to compare the prints lifted by Officer King with those of the two men. Investigator Richardson also took still photographs from the video surveillance of the robbery, and he obtained a photograph of Defendant that had been taken on June 14, 2013. In the photograph, Defendant had a beard, mustache, and longer hair. This differed from his appearance at trial. Investigator Richardson showed a photographic lineup to Ms. Barham on August 1 or 2, 2013, but she was unable to identify anyone from the lineup as the individual who committed the robbery. Mr. Roane reported that the prints did not match those of Shawn Bruin.

William Roane, an expert in the area of latent print identification and examination, testified that he compared the fingerprints lifted by Officer King from the Circle K with those of Defendant. He determined that a print lifted from inside the cash drawer of the register was made by Defendant's left ring finger and "no other." Mr. Roane testified that another latent fingerprint examiner with the Jackson Police Department, Aimee Oxley, conducted an independent analysis and verified his findings.

*Analysis*

### I. Sufficiency of the Evidence

Defendant contends that the evidence at trial was insufficient to sustain his conviction for aggravated robbery. Specifically, Defendant asserts that the State failed to prove that

3

anything was taken from Ms. Barham's person and that the State failed to produce the weapon used during the aggravated robbery. Defendant also argues that the State failed to prove that he was the perpetrator of the aggravated robbery. We conclude that the evidence is sufficient to support Defendant's conviction.

"Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009) (citing *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992)). When this court evaluates the sufficiency of the evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011) (citing *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Parker*, 350 S.W.3d 883, 903 (Tenn. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt."

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. *State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005); *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. *Dorantes*, 331 S.W.3d at 379 (citing *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this court shall not substitute its inferences for those drawn by the trier of fact. *Id*.

The identity of the perpetrator "is an essential element of any crime." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006). The perpetrator's identity "may be established solely on the basis of circumstantial evidence." *State v. Lewter*, 313 S.W.3d 745, 748 (Tenn. 2010).

4

A person commits aggravated robbery who commits a robbery with a deadly weapon. T.C.A. § 39-13-402(a)(1). Robbery "is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." *Id.* § 39-13-401(a). "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." *Id.* § 39-14-103.

Defendant first argues that the State failed to prove that "anything was taken from the person of Candice Barham." He asserts that Defendant did not touch or threaten Ms. Barham and that the money taken on July 31, 2013, did not belong to Ms. Barham. He also notes that the State did not produce any weapon used in the offense. In the light most favorable to the State, the proof at trial showed that during the early morning hours of July 31, 2013, Ms. Barham was working as the First Assistant Manager of the Circle K convenience store located on the corner of Highland and University Streets in Jackson. As the First Assistant Manager, it was her responsibility to exercise custody and control over the money in the cash register. The proof showed that Ms. Barham is an employee of the Circle K Convenience Store. Ms. Barham testified that when she turned to look out the window into the parking lot, Defendant walked behind the register. When she turned back around, he was standing within two feet of her. Defendant then pointed a pistol at Ms. Barham and ordered her to "[o]pen the drawer. I'm not fu - - - - g playing with you. Open the drawer." Ms. Barham testified that at that point, she felt threatened and feared for her life. She opened the cash register and stepped back. Defendant reached into the drawer and took the bills that were in the till. He also lifted the till to see if there was any money underneath, but it was empty. Ms. Barham testified that Defendant took a total of forty-four dollars out of the register. Although the State did not introduce a pistol at trial, Ms. Barham testified that Defendant pointed a pistol at her, and she identified Defendant in the video holding an object in his right hand as he approached her. Ms. Barham identified the object as a pistol.

Defendant also argues that the State failed to prove that he was the individual who committed the aggravated robbery. Ms. Barham identified Defendant in the courtroom as the person who robbed her on July 31, 2013, at the Circle K Convenience Store. Ms. Barham admitted that she could not identify Defendant from the photographic lineup that she was shown after the robbery because Defendant looked different in the photograph. Investigator Robinson confirmed that Defendant looked different in the courtroom than he did in the photo. In the photograph, Defendant had a beard, mustache, and longer hair. After the robbery, Ms. Barham described Defendant's clothing to police, and Officer Vincent saw a man, who Ms. Barham identified as the person who robbed her, run out of the Circle K wearing the same clothing that Ms. Barham had described. At trial, Ms. Barham identified Defendant several times in the surveillance video. Mr. Roane, an

5

expert in the area of latent print identification and examination, testified that he compared the fingerprints lifted by Officer King from the Circle K with those of Defendant. He determined that a print lifted from inside the cash drawer of the register was made by Defendant's left ring finger and "no other." Mr. Roane testified that another latent fingerprint examiner with the Jackson Police Department, Aimee Oxley, conducted an independent analysis and verified his findings.

Therefore, we conclude that evidence existed that reasonable minds could accept that Defendant committed the offense of aggravated robbery.

## II. Length of Sentence

Defendant challenges the length of his sentence for the Class B felony of aggravated robbery. He contends that the trial court erred by failing to consider certain mitigating factors.

Appellate review of the length, range, or manner of service of a sentence imposed by the trial court are to be reviewed under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). In sentencing a defendant, the trial court shall consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. *See* Tenn. Code Ann. §§ 40-35-102, -103, -210; *see also Bise*, 380 S.W.3d at 697-98. The burden is on the appellant to demonstrate the impropriety of his sentence. *See* Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c).

Although the trial court should consider enhancement and mitigating factors, the statutory enhancement factors are *advisory only*. *See* Tenn. Code Ann. § 40-35-114; *see also Bise*, 380 S.W.3d at 701; *State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008). Our supreme court has stated that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." *Carter*, 254 S.W.3d at 345. In other words, "the trial court is free to select *any sentence within the applicable range* so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" *Id*. at 343 (*emphasis added*). Appellate courts are "bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Id*. at 346.

The applicable sentencing range for a Range I offender convicted of a Class B felony is 8 to 12 years. T.C.A. § 40-35-112(a)(2). The trial court imposed a sentence of ten years for Defendant's conviction of aggravated robbery.

The trial court stated on the record its findings regarding applicable enhancement and mitigating factors. Concerning enhancement factors, the trial court stated:

> As far as enhancing factors, of course, the juvenile records referred to in the presentence report, the history as to this Defendant, but while incarcerated for this offense, of course, he committed the act of vandalism. That is evidenced in the record at this point, Exhibit 2. He does have the prior juvenile adjudications for assault and resisting arrest. If you review the presentence report, and there's been no contest to its accuracy, he had a tendency to flee on occasion. He would run when they were about to apprehend him. That's referenced more than one time. And in fact, it's referenced in the testimony in this case through the father, Mr. Drummond. And I know it's difficult for the family. The father is here. But this Defendant did flee to Daytona Beach, Florida after this incident.

T.C.A. § 40-35-114(1) and (16). The trial court did not find any specific mitigating factors applicable to Defendant. However, the trial court stated: "There is a catch all, I think Number 13, any factors consistent with the purpose of the chapter. I might consider

7

the young age of this Defendant who's now 18 years of age, but that would be the only thing I could think of that would apply." T.C.A. § 40-35-113(13). More specifically, Defendant argues that the trial court "considered the Defendant's juvenile records, the vandalism conviction received during pretrial incarceration, the presentence report and the jail conversation recorded after Defendant was convicted but refused to thoughtfully consider the Defendant's age or anything else." Defendant further asserts that trial court failed to consider his mental health as a mitigating factor.

In *Bise* our supreme court held:

> We hold, therefore, that a trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court *wholly departed* from the 1989 Act, as amended in 2005. So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld.

*Bise*, 380 S.W.3d at 706 (*emphasis added*). In its conclusion, the supreme court pointed out that in sentences involving misapplication of enhancement factors (even in those cases where *no* enhancement factor actually applies) the sentences must still be affirmed if the sentences imposed are within the appropriate range, and the sentences are in compliance with statutory sentencing purposes and principles. *Id*. at 710.

Our General Assembly has enacted twenty-five (25) statutory sentencing enhancement factors; however, they are not binding upon the trial courts. T.C.A. § 40-35-114 (Supp. 2015). The standard of review established in *Bise* provides that the minimum sentence can be imposed even if the trial court correctly applies all twenty-five enhancement factors, or the maximum sentence imposed even if no statutory enhancement factors are applicable, as long as the sentence is within the correct range and the sentence complies with other sentencing purposes and principles. Accordingly, appellate review of enhancement factor issues is arguably superfluous when reviewing the length of a sentence.

Having reviewed the record before us, we conclude that the trial court clearly stated on the record its reasons for the sentences imposed, and Defendant's sentence is within the appropriate range. The record reflects that the trial court considered the purposes and principles of the Sentencing Act. Defendant argues that the trial court failed to consider his age and mental health as mitigating factors. However, even if this court agreed with Defendant's assertions, we would still lack grounds to reverse Defendant's sentence. Therefore, the trial court's imposition of a sentence of ten years for aggravated robbery is presumed reasonable.

8

Accordingly, the judgment is affirmed.

_____
THOMAS T. WOODALL, PRESIDING JUDGE