IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs January 4, 2018

**STATE OF TENNESSEE v. ANGELA L. SMITH**

**Appeal from the Circuit Court for Gibson County**
**No. H9317    Clayburn Peeples, Judge**

_____

**No. W2017-01036-CCA-R3-CD**

_____

The Defendant, Angela Smith, appeals her conviction for aggravated arson and her resulting sentence of thirty-five years at 100% as a Range II, multiple offender.  On appeal, the Defendant raises issues challenging the sufficiency of the evidence, the photographic line-up, and her sentence.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Harold R. Gunn, Humboldt, Tennessee, for the appellant, Angela L. Smith.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Garry Brown, District Attorney General; and Jason Scott and Jerald Campbell, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL AND PROCEDURAL BACKGROUND**

The evidence presented at trial established that during the early morning hours of April 23, 2012, while four people who lived in an adjoining apartment were sleeping, the victim set fires on the front and back porches of a duplex in Humboldt, Tennessee, where she had been living.  Mr. Anthony Burke lived behind the duplex with his backyard abutting the backyard of the duplex.  During that time period, Mr. Burke worked until midnight and slept during the day.  At approximately 4:20 a.m., Mr. Burke went outside to retrieve his cellular phone, which he had left in his car.  He testified that he saw a light

flicker and then saw the back porch of the duplex on fire. He also saw the Defendant "dousing" the fire with what appeared to be lighter fluid.

Mr. Burke testified that he told the Defendant to come to him. The Defendant did not come directly to Mr. Burke but was standing ten to twelve feet away from him and underneath a street light. Mr. Burke asked the Defendant what she was doing, and she replied, "Don't worry about it." Mr. Burke stated that the Defendant attempted to conceal what appeared to be lighter fluid under her hoodie. When Mr. Burke approached her, she fled. Mr. Burke chased the Defendant toward the end of the street and then ran back to his home where he instructed his then girlfriend to call the police.

Mr. Burke ran to the back porch of the duplex and saw that the Defendant had used a foosball table and pieces of scrap wood positioned against the duplex to start the fire. Mr. Burke beat on the door to wake anyone who might be inside the duplex, and two or more people exited the duplex. Mr. Burke returned to the back porch where he removed items and attempted to extinguish the fire. Once he saw the firefighters and police officers arriving, he ran to the street to flag them down.

Later the same day, Mr. Burke provided the police officers with a written statement, and he identified the Defendant from a photographic line-up on the following day. He said he did not know the Defendant when he identified her in the line-up. He denied having a prior confrontation with the Defendant during which he called her children "N words" or previously following the Defendant around while in a supermarket.

Ms. Sarah Woods testified that at the time of the fire, she was living in an apartment in the duplex with Mr. Freddie Parris, Ms. Samantha Callison, and Ms. Callison's young son. Ms. Woods stated that while the Defendant moved her belongings into the other apartment in the duplex, Ms. Woods did not know whether the Defendant ever spent the night there. Ms. Woods had seen the Defendant at the duplex on only three occasions within the month, including April 22, 2012, the day prior to the fires.

Ms. Woods testified that on the afternoon of April 22nd, the Defendant was moving her belongings out of the apartment when the landlord arrived. The Defendant and the landlord began arguing because the landlord wanted money from the Defendant before she moved. The Defendant said she did not have the money. Ms. Woods said that before the Defendant left, the Defendant said, "[T]his blank[1] is going down tonight." Ms. Woods stated that she, Mr. Parris, and Ms. Callison heard the Defendant make the

---

[1] Ms. Woods expressed reluctance to curse during her testimony. She clarified that the curse word with which she substituted "blank" was another word for a "female dog."

statement. Ms. Woods did not believe that the landlord was present when the Defendant made the statement.

During the early morning hours of April 23rd, Ms. Woods awoke to a man banging on the door and yelling, "Get out, get out, your house is on fire, your house is on fire." Once Ms. Woods and the others got out of the apartment, the man informed them that he was getting ready for work when he looked out of his window and saw a person setting fire to the duplex.

On cross-examination, Ms. Woods acknowledged that she did not see who set the fire. She said that when the Defendant first moved into the apartment, the landlord introduced the Defendant to her. Ms. Woods did not know that the Defendant had two small children and never saw the children playing in the yard.

Humboldt Police Officer Matthew Nierenberger responded to the scene. When he arrived, he saw three people attempting to extinguish a small fire on the front porch. Upon speaking to someone at the scene, Officer Nierenberger realized that there was also a fire on the back porch. He stated that a game table had been set on fire and was leaning against the back door areas of the duplex. He believed that the fire department had to use equipment to extinguish the fire on the back porch.

Investigator Randy Smith, the assistant fire chief and lead fire investigator for the City of Humboldt, was called to investigate the fires, which had been extinguished before his arrival. He noted evidence of burning on the front porch of the duplex and damage to the rear porch leading into the back door of one of the apartments. He did not test for accelerants. He took a written statement from Mr. Burke, who denied knowing the Defendant, and was present when Mr. Burke identified the Defendant in a photographic line-up as the perpetrator.

On cross-examination, Investigator Smith testified that the Defendant was developed as a suspect due to statements she had made prior to the fire. He noted that other witnesses who provided statements to law enforcement about the Defendant included Mr. Parris, who was deceased, and Ms. Callison, whom Investigator Smith was unable to locate by the time of the trial.

Mr. Rayburn Anthony, who owned the duplex, testified that he told the Defendant that he wanted her to move out of the apartment because she was three months behind on the rent. The Defendant responded that while she did not have anywhere to go, she would find another place to live. Mr. Anthony did not recall an argument between them. He also could not remember whether the Defendant had moved out when the fire occurred.

Mr. Anthony was contacted about the fire by both the fire department and Mr. Burke. He arrived at the scene around daylight and observed that the fire had melted some of the plastic around the back door. He clarified that the damage was to the apartment that had been rented by the Defendant. He recalled that others were renting the second apartment but he could not recall who they were. He stated that the Defendant did not have permission to burn the duplex and that he never instructed her to do so.

On cross-examination, Mr. Anthony testified that he did not know who started the fire. He did not report the fire to his insurance company but paid for the repairs himself to avoid having a claim against his insurance policy. He stated that the damage totaled more than the $500 deductible.

The Defendant, testifying in her own defense, acknowledged that she had three prior convictions for aggravated burglary, three prior theft convictions, and one prior conviction for attempted burglary, all of which occurred in November 2002. She maintained that during a prior incident, she and Mr. Burke exchanged "a few words" when one of her daughters and a friend were playing in his backyard. She stated that after Mr. Burke "said what he said," she told the children to return to her house.

The Defendant testified that she moved into the apartment in January 2012 and moved out in March 2012. She said that in April 2012, her belongings were still inside the apartment but that she was living with her aunt. She denied that she owed Mr. Anthony rent or that she attempted to negotiate with him to remain in the apartment. She said she only owed Mr. Anthony the deposit of $200. She denied threatening to damage the duplex and maintained that she did not start the fire. She asserted that she was at her aunt's home when the fire occurred.

On cross-examination, the Defendant maintained that she told Mr. Anthony that she was moving and that he did not ask her to move. She said Mr. Anthony never introduced her to her neighbors in the duplex. She denied saying, "[T]his bitch is going down tonight." She stated that in addition to the confrontation with Mr. Burke in the backyard, Mr. Burke followed her around the grocery store.

The jury convicted the Defendant of aggravated arson. Following a sentencing hearing, the trial court sentenced the Defendant to thirty-five years to be served at 100% as a Range II, multiple offender. This appeal follows.

## ANALYSIS

Tennessee Rule of Appellate Procedure 27 lists the required contents of an appellant's brief. Defense counsel has failed to comply with the majority of these

requirements in his six-page brief. The Defendant lists four issues in her statement of issues: two issues relating to the sufficiency of the evidence, one issue relating to the photographic line-up, and one issue relating to sentencing. The Defendant, however, does not argue any issues relating to sentencing anywhere in her brief. *See* Tenn. R. App. P. 27(a)(7) (requiring that an appellant's brief include an argument setting forth the appellant's contentions with respect to the issues presented). Accordingly, this issue is waived. *See* Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court.").

The Defendant only lists Tennessee Rule of Appellate Procedure 3 in her table of authorities. *See* Tenn. R. App. P. 27(a)(2) (requiring "[a] table of authorities, including cases (alphabetically arranged), statutes and other authorities cited, with references to the pages in the brief where they are cited"). The absence of any other authority in the table of authorities is explained by the Defendant's complete failure to cite to any statute, case law, rule, or any other authority in support of her claims. *See* Tenn. R. App. P. 27(a)(7) (requiring that the argument include "citations to the authorities" and "a concise statement of the applicable standard of review"). The Defendant's argument regarding the photographic line-up primarily consists of questions about why a photographic line-up was necessary. We conclude that the Defendant has failed to articulate the basis upon which she challenges the photographic line-up. In short, the Defendant's brief is inadequate. While we elect to address the sufficiency issue, we conclude that the remaining issues are waived. *See* Tenn. Ct. Crim. App. R. 10(b).

When a defendant challenges the sufficiency of the evidence, the relevant question for this court is "whether, after viewing the evidence in the light most favorable to the State, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On appeal, "'the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Therefore, this court will not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Instead, it is the trier of fact, not this court, who resolves any questions concerning "the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997).

A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

This court applies the same standard of review regardless of whether the conviction was predicated on direct or circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011). "Circumstantial evidence alone is sufficient to support a conviction, and the circumstantial evidence need not exclude every reasonable hypothesis except that of guilt." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012).

As it relates to the present case, a person commits arson who "knowingly damages any structure by means or a fire or explosion" and "[w]ithout the consent of the persons who have a possessory, proprietary or security interest therein." T.C.A. § 39-14-301(a)(1). Aggravated arson, as charged here, is arson "[w]hen one (1) or more persons are present therein." T.C.A. § 39-14-302(a)(1).

On appeal, the Defendant contends that the evidence is insufficient to establish her identity as the perpetrator. The identity of the perpetrator "is an essential element of any crime." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006). Identity "may be established solely on the basis of circumstantial evidence." *State v. Lewter*, 313 S.W.3d 745, 748 (Tenn. 2010). "The credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made." *State v. Radley*, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999) (citing *State v. Strickland*, 885 S.W.2d 85, 87-88 (Tenn. Crim. App. 1993)). The issue of identity is a question of fact left to the jury as the trier of fact to resolve. *State v. Crawford*, 635 S.W.2d 704, 705 (Tenn. Crim. App. 1982).

The evidence, when viewed in a light most favorable to the State, establishes that Mr. Anthony asked the Defendant to move because she was behind on rent. Ms. Woods then overheard the Defendant say, "[T]his bitch is going down tonight." During the early morning hours of the following day, Mr. Burke saw the duplex on fire and the Defendant pouring what appeared to be lighter fluid on the fire. Mr. Burke told the Defendant to come to him, and the Defendant approached and stopped at ten to twelve feet away from Mr. Burke and underneath a street light. Mr. Burke said the Defendant was attempting to hide what appeared to be a container of lighter fluid. When Mr. Burke asked her what she was trying to hide, the Defendant told him, "[D]on't worry about it," and she fled. Mr. Burke identified the Defendant as the perpetrator both in a photographic line-up shortly after the fire and at trial. While the Defendant challenges the credibility of Mr. Burke, we reiterate that it was the jury's prerogative, as the trier of fact, to evaluate the credibility of the witnesses, determine the weight given to the witnesses' testimony, and reconcile all conflicts in the evidence. *See Bland*, 958 S.W.2d at 659. The jury chose to credit Mr. Burke's testimony and reject the Defendant's testimony. We conclude that this evidence, when viewed in a light most favorable to the State, is sufficient to establish the Defendant's identity as the perpetrator.

- 6 -

**CONCLUSION**

For the foregoing reasons, we affirm the judgment of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE