IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 25, 2023

## STATE OF TENNESSEE v. DOMINIQUE MICHAEL BYRD

**Appeal from the Criminal Court for Knox County**
**No. 118669   Steven W. Sword, Judge**

_____

**No. E2023-00274-CCA-R3-CD**

_____

A Knox County jury found the Defendant, Dominique Michael Byrd, guilty of theft of property and vandalism, and the trial court sentenced him to serve an effective sentence of eleven months and twenty-nine days.  On appeal, the Defendant argues only that the evidence is legally insufficient to show that he is the person who committed the crimes. On our review, we respectfully disagree and affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgments of the Criminal Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and MATTHEW J. WILSON, JJ., joined.

Michael A. Graves, Knoxville, Tennessee, for the appellant, Dominique Michael Byrd.

Jonathan Skrmetti, Attorney General and Reporter; Edwin Alan Groves, Jr., Assistant Attorney General; Charme P. Allen, District Attorney General; and Randall J. Kilby, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTUAL BACKGROUND

Randall Abernathy owned the Family Bubble, a self-serve laundromat in Knoxville, Tennessee.  The laundromat had dozens of washers, along with televisions, an ATM, and several bulk vending machines for the convenience of its customers.  It also had a type of crane or claw arcade machine with merchandise and prizes inside.

On June 26, 2019, someone vandalized the claw machine and stole a pair of Beats headphones and a Bluetooth speaker. The damage to the claw machine cost about $1,018 to repair, and the value of the two stolen items was $459.90.

Investigator Anthony Delalla from the Knoxville Police Department's property crimes division investigated the offenses.[1] The investigator watched two videos from the laundromat's surveillance system. The first video showed the Defendant arriving at the laundromat in a car about thirty minutes before it opened at 8:00 a.m. Shortly after the business opened, the Defendant went inside to use the restroom, though he was not carrying any laundry. The Defendant, who was wearing a t-shirt, shorts, and sandals, went to the back of the laundromat. He returned, watched television for a moment, and then left.

The video showed the Defendant entering the laundromat a second time about three or four minutes later. After going into the restroom again, he watched television for about ten minutes and was briefly joined by a female companion. Afterward, the Defendant went to the claw machine, looked at the prizes inside, and stood there momentarily. The Defendant then left the laundromat, looking back at the machine as he exited.

A second video showed a person dressed in all black with a red mask coming into the laundromat about twenty minutes later. The person first looked into the laundromat office next to the entrance and entered the restroom. The person then walked to the claw machine and, after trying to break the plexiglass by punching it, broke the case open with a fire extinguisher taken from the back of the laundromat. The person took a Bluetooth speaker and a pair of Beats headphones and left the business.

A few weeks later, Mr. Abernathy noticed what he believed to be the car from the video, and he noted the license tag. Mr. Abernathy delivered the information to Investigator Delalla, who determined that the vehicle belonged to the Defendant. The investigator then created a photo line-up from which Mr. Abernathy identified the Defendant as the person in the first video.

A Knox County grand jury charged the Defendant with vandalism and theft of property, each valued at $1,000.00 or less. Following a trial on November 9, 2022, during which only Investigator Delalla and Mr. Abernathy testified, a jury found the Defendant guilty of both offenses as charged. The trial court sentenced the Defendant to concurrent

---

[1]     Although the investigator's name is variously spelled throughout the record, we have used the spelling as indicated on the indictment.

sentences of eleven months and twenty-nine days. The court suspended the sentences, placed the Defendant on probation, and ordered that he pay restitution.

The Defendant filed a timely motion for a new trial, and the trial court denied this motion after a hearing on January 27, 2023. The Defendant filed a timely notice of appeal twenty-eight days later on February 24, 2023.

## STANDARD OF APPELLATE REVIEW

Our supreme court has recognized that "the first question for a reviewing court on any issue is 'what is the appropriate standard of review?'" *State v. Enix*, 653 S.W.3d 692, 698 (Tenn. 2022). "The standard for appellate review of a claim challenging the sufficiency of the State's evidence is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Miller*, 638 S.W.3d 136, 157 (Tenn. 2021) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "The standard of review is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (internal quotations and citations omitted).

On appeal, this court "neither re-weighs the evidence nor substitutes its inferences for those drawn by the jury." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (citing *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). Moreover, the trier of fact, and not this court, resolves "all questions as to the credibility of trial witnesses, the weight and value of the evidence, and issues of fact raised by the evidence." *State v. Lewter*, 313 S.W.3d 745, 747 (Tenn. 2010). "Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

## ANALYSIS

In this appeal, the Defendant challenges only the legal sufficiency of the evidence supporting his convictions for vandalism and theft of property. He does not argue that the State failed to prove any statutory element of the respective offenses. Instead, the Defendant asserts that the State failed to prove that he was the person who committed the crimes. In response, the State argues that the video evidence and witness testimony established both physical and behavioral characteristics that could be used to identify the Defendant as the perpetrator. We agree with the State.

3

As charged in this case, a person commits the offense of vandalism when he or she knowingly "[c]auses damage to or the destruction of any real or personal property of another . . . knowing that the person does not have the owner's effective consent[.]" Tenn. Code Ann. § 39-14-408(b)(1). Similarly, a person commits theft of property "if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." *Id*. § 39-14-103(a); *State v. Gentry*, 538 S.W.3d 413, 422 (Tenn. 2017) ("[T]hree elements must be proven to establish theft under our statute: (1) the defendant knowingly obtained or exercised control over property; (2) the defendant did not have the owner's effective consent; and (3) the defendant intended to deprive the owner of the property." (citation and internal quotation marks omitted)).

In addition to proving the statutory elements of any crime, "[t]he State has the burden of proving the identity of the defendant as the perpetrator beyond a reasonable doubt." *State v. Coyne*, No. E2020-01655-CCA-R3-CD, 2022 WL 414355, at *13 (Tenn. Crim. App. Feb. 11, 2022), *perm. app. denied* (Tenn. June 9, 2022). Indeed, the "[i]dentity of the perpetrator is an essential element of any crime." *State v. McLawhorn*, 636 S.W.3d 210, 237 (Tenn. Crim. App. 2020) (citation and internal quotation marks omitted). Like other elements, "[i]dentity may be established by circumstantial evidence alone." *State v. Miller*, 638 S.W.3d 136, 158 (Tenn. 2021), *cert. denied*, 143 S. Ct. 128 (2022); *Lewter*, 313 S.W.3d at 748 ("The identity of the perpetrator is an essential element of all crimes and may be established solely on the basis of circumstantial evidence.").

In this case, the evidence established that Mr. Abernathy was the owner of the claw machine and its contents. Tenn. Code Ann. § 39-11-106(29) (defining "owner" to include any person "who has possession of" property). The evidence also established that the machine was significantly damaged and that at least two of the prizes inside were taken by a person. At trial, Mr. Abernathy testified that he did not give anyone permission to damage the machine or take its contents. Viewing the evidence in a light most favorable to the State, a reasonable juror could find the essential elements of vandalism and theft of property beyond a reasonable doubt.

The same is true concerning the perpetrator's identity as the Defendant, and three aspects are important to the analysis in the context of this case. First, the proof establishes a link between the Defendant and the scene of the crimes shortly before they occurred. As the video evidence shows, the Defendant arrived at the Family Bubble about thirty minutes before it opened on a Wednesday morning. Once the business opened, he entered the laundromat without laundry and stayed for about twenty minutes watching television and walking throughout the establishment, including to the restroom. Except for a member of the janitorial staff who was present around the laundromat's opening and a female companion who joined him briefly, the Defendant was generally alone in the laundromat until he left.

4

The perpetrator arrived less than twenty minutes after the Defendant departed. Like the Defendant, the perpetrator came into the laundromat and entered the same restroom that the Defendant had visited earlier. After an initial attempt to break into the claw machine failed, the perpetrator immediately went to the back of the laundromat to obtain a fire extinguisher to use as a club against the claw machine. From the video, the presence of the fire extinguisher in the back of the laundromat is not obvious. However, it was in an area the Defendant visited earlier, and the perpetrator knew the establishment well enough to know immediately where the item was located. The Defendant's close connection with the time and place of the crimes is circumstantial evidence from which a reasonable juror could find that the Defendant was the perpetrator.

Second, the proof establishes a link between the Defendant and the particular property that was damaged and stolen. While the Defendant was in the Family Bubble, he interacted with the claw machine. He approached the machine, looked at its merchandise, and played with the controls. As he was leaving the laundromat, he turned to look back at the claw machine specifically. Significantly, this is not a case in which a laundromat customer sought to pass the time with an arcade diversion. Instead, it is one in which the Defendant had no apparent purpose to be at the Family Bubble in the first place or to interact with the claw machine in the second. A reasonable juror could infer that the Defendant was present early on a weekday morning to scope out the laundromat and its contents. As such, the Defendant's close connection to the property, minutes before it was damaged and stolen, is further circumstantial evidence from which a reasonable juror could find that the Defendant was the perpetrator.

Finally, the proof establishes a link between the Defendant and the physical characteristics of the perpetrator. Mr. Abernathy testified at trial that he compared the Defendant in the first video with the perpetrator in the second video using various reference points such as doors and other objects. In his view, the Defendant and the perpetrator shared similar postures and were the same height, "dead on." Mr. Abernathy also testified that each person shared a distinctive gait, with their feet pointing outward when standing and walking. He observed that, like the Defendant, "[i]t looks like [the perpetrator is] a little bit duck-footed when he walks, but he also walks a little bit hunched." The Defendant's physical similarity to the perpetrator is additional circumstantial evidence from which a reasonable juror could find that the Defendant was the perpetrator.

The Defendant vigorously disagrees with Mr. Abernathy's comparisons and argues that he and the perpetrator are not similar at all. He asserts that he wore different clothes and shoes than the perpetrator. He also contends that Mr. Abernathy's opinion comparing the perpetrator's gait with his does not account for others who could have the same or similar gait. Two responses are in order.

5

First, the identification of a defendant as the perpetrator of a crime is a question of fact for the jury after considering all the relevant proof. *State v. Watkins*, 648 S.W.3d 235, 253 (Tenn. Crim. App. 2021). Each argument advanced in this court was also asserted before the jury. After hearing these arguments, the jury had the opportunity to evaluate the credibility of the witnesses and to examine and compare the video evidence during deliberations. The Defendant's arguments essentially invite us to reweigh the evidence on appeal. We respectfully decline to do so. *See State v. Shackleford*, 673 S.W.3d 243, 250 (Tenn. 2023) ("We do not reweigh the evidence because questions regarding witness credibility, the weight to be given the evidence, and factual issues raised by the evidence are resolved by the jury, as the trier of fact." (citations omitted)).

Second, it is true that the evidence of identity is circumstantial. However, the law is clear that the identity of the perpetrator "may be established solely on the basis of circumstantial evidence." *Lewter*, 313 S.W.3d at 748. To the extent that the Defendant argues that the proof of identity is not overwhelming, our standard of appellate review does not require it to be. *State v. Lyons*, 669 S.W.3d 775, 791 (Tenn. 2023). Instead, the standard of review "is highly deferential—it merely requires us to determine whether any rational trier of fact could have found" the essential elements of the crimes beyond a reasonable doubt. *Id.*

In this case, the circumstantial proof showed that the Defendant had a close connection to the time, place, and property involved in the crimes and that he shared unique physical characteristics with the perpetrator. Having reviewed the videos ourselves, and viewing all the evidence in a light most favorable to the State, we conclude that a reasonable juror could have found the element of identity beyond a reasonable doubt. As such, we affirm the Defendant's convictions for vandalism and theft of property.

## CONCLUSION

In summary, we hold that the evidence is legally sufficient to support the Defendant's convictions for vandalism and theft of property. Accordingly, we respectfully affirm the judgments of the trial court.

_____
TOM GREENHOLTZ, JUDGE

6