IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs September 6, 2018

**STATE OF TENNESSEE v. TROY LEE SPRINGFIELD**

**Appeal from the Circuit Court for Madison County**
**No. 15-360   Donald H. Allen, Judge**

_____

**No. W2017-01013-CCA-R3-CD**

_____

Defendant, Troy Lee Springfield, was found guilty of attempted voluntary manslaughter, aggravated assault, being a convicted felon in possession of a firearm, and employing a firearm during the commission of a dangerous felony. He was sentenced to eight years for attempted voluntary manslaughter, ten years for aggravated assault, four years for being a convicted felon in possession of a firearm, and ten years for employing a firearm during the commission of a dangerous felony. The trial court ordered the sentences for aggravated assault and employing a firearm during the commission of a dangerous felony to be served consecutively to each other and concurrently with the remaining counts for an effective sentence of twenty years. On appeal, Defendant argues that the evidence was insufficient to support his convictions, and the State did not prove his identity as the perpetrator of the offenses.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT H. MONTGOMERY, JR., JJ., joined.

Noel H. Riley, Dyersburg, Tennessee, for the appellant, Troy Lee Springfield.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; James G. Woodall, District Attorney General; Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Background*

The victim, Ticie Johnson, testified that Defendant is her ex-boyfriend, and they dated for approximately one year before she broke up with him in November or December of 2014. The victim testified that between November 2014 and February 10, 2015, Defendant still called and texted her, but she did not respond. She also saw him at

work.  The victim explained that she and Defendant worked for different companies, but both were housed inside of the Kellogg factory in Jackson.

On February 10, 2015, the victim left for work at approximately 4:30 a.m.  As she was driving to work, she stopped at the stop sign on Crescent and Park Avenues.  The victim began to turn and heard "a noise hit the side of the car on the right side in the back door[.]"  The victim thought that she ran over something.  She heard another sound and then realized that someone was shooting at her.  The shot hit her back window and shattered it, but the glass did not immediately fall out.  The victim testified that she "turned on out and another bullet hit the back window, and it still didn't break[.]"  She ducked down, and a third bullet struck the window.  The victim testified that she looked between the seat and the door and saw Defendant standing outside in the middle of the street pointing a handgun at the back of her car.  She then sped away and drove to the Kellogg factory.  The victim testified that she thought that she was going to die when she realized Defendant was shooting at her.  She heard a total of four shots.

The victim testified that she did not drive home because her children were there, and she did not want Defendant to follow her.  She called her mother on the way to the Kellogg factory, and her mother called police.  The victim arrived at the factory and advised a security guard of the shooting.  She went inside the "guard shack" and waited for police to arrive.  The victim testified that she looked at her car after police arrived.  She said:  "There was a bullet hole on the back door at the bottom and the window was out, and it had a mark on the side where the bullet ricocheted and hit the side."  The victim noted that the car she was driving actually belonged to her mother.  The victim paid approximately $257 to repair the window.  The victim testified that Defendant arrived at the factory after police got there, and she advised them that he was the shooter.  She said that the police went over and attempted to make contact with Defendant.

On cross-examination, the victim agreed that she testified at the preliminary hearing that she saw the "form" of a man at the time of the shooting and that she did not see his face or the clothes that he was wearing.  The victim testified that she identified Defendant as the shooter when she ducked down and looked through the window.  On redirect examination, the victim testified that she was able to identify Defendant at the time of the shooting based on his size and body shape.

Officer Christopher Austin of the Jackson Police Department testified that he and Officer McCrary were dispatched to the Kellogg factory at approximately 5:00 a.m. on the morning of the shooting.  Officer Austin spoke with the victim who was "kind of distraught, kind of crying, [and] upset."  The victim told him that she heard gunshots while on Crescent Avenue, and she showed him the damage to her vehicle.  She said that she got out of the area as quickly as possible because she was afraid for her life.  Concerning the damage to the victim's car, Officer Austin testified:

First thing I saw was the back window. The back window was basically like a spider[]web effect as far as when, you - - you know, you break something, it has a spider[]web. It looked like the point that it was about to break. And there was a point, I forgot where it was actually on the window, but you could tell where something had entered into the back window.

Officer Austin testified that he saw ricochet marks on the victim's car, and there was a bullet hole in the rear passenger door.

Officer Austin testified that he asked the victim who she believed shot at her car, and she "said she had saw a figure in the back window, and she swore to me at that point that she thought it was her . . . ex-boyfriend, [Defendant]." Officer Austin further testified that the victim "said that she could see - - recognized him, that she had been with him for a very long time and that she recognized right off the bat it was him[.]" Officer Austin testified that someone later approached them at the factory and said that they believed that Defendant was at work in the factory. He said that they entered the gate and saw Defendant walking across a breezeway, and they made contact with him. Officer Austin noted that someone had also advised them that Defendant was not supposed to be on the property at that time. Defendant told police that he had been at someone else's house that night. Officer Austin was then advised by his supervisor to take Defendant into custody, and he was transported to jail. They did not find a weapon in Defendant's possession.

Ron Pugh is an investigator with the Major Crimes Unit of the Jackson Police Department. He arrived at the Kellogg factory at approximately 5:30 to 6:00 a.m. on February 10, 2015. Investigator Pugh learned what happened from Officer Austin, and the officer took him to the victim. She was "visibly upset" and immediately began to tell Investigator Pugh that shots had been fired at her car. Investigator Pugh testified that he inspected the victim's car and noted the "car had been shot." He said that the back glass was knocked out, and there were a couple of bullet marks on the door. Investigator Pugh testified that no gun or shell casings were ever found, and no bullets were recovered from the vehicle. Investigator Pugh took a formal statement from the victim at the scene.

Investigator Pugh was advised that the victim had identified the shooter as Defendant, her ex-boyfriend, and that he had been taken into custody after showing up at the factory. Investigator Pugh first saw Defendant when Defendant arrived at the police department at approximately 2:30 p.m. for an interview. Sergeant Brian Spencer was also present. Investigator Pugh advised Defendant of his *Miranda* rights, and Defendant signed a waiver. Defendant then gave the following statement: "I wasn't – it wasn't supposed to happen like that at all. The car got shot at. No harm was meant toward her. It was just to scare her. I fired the gun. [The victim] wasn't supposed to get hurt at all."

Rachelle Fjeldahl, a records keeper for Employment Pro, a staffing agency for the Kellogg plant, testified that Defendant was employed by Employment Pro to work in the Kellogg factory. She said that he worked for Aldelano, which is a "partnership with Kellogg's." Defendant was not scheduled to work at the factory on February 9-10, 2015.

At the close of the State's proof, a certified copy of a judgment from the Haywood County Circuit Court was entered showing that Defendant had been convicted of aggravated robbery on May 16, 1996.

*Analysis*

Defendant challenges the sufficiency of the evidence to support his conviction for attempted voluntary manslaughter. He further states: "If his conviction of attempted voluntary manslaughter fails, it stands to reason that the other counts should be dismissed." He specifically argues that the State failed to prove his identity as the perpetrator of the offenses.

The standard for appellate review of a claim challenging the sufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). To obtain relief on a claim of insufficient evidence, appellant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

On appellate review, "we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom." *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). This court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant, who must demonstrate to this court that the

evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

Defendant does not contend that the State failed to prove the elements of any offense for which he was convicted other than his identity as the perpetrator of the offenses. The identity of the perpetrator "is an essential element of any crime." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006). The perpetrator's identity "may be established solely on the basis of circumstantial evidence." *State v. Lewter*, 313 S.W.3d 745, 748 (Tenn. 2010). The question of identity is a question of fact left to the trier of fact to resolve. *State v. Crawford*, 635 S.W.2d 704, 705 (Tenn. Crim. App. 1982).

Viewing all reasonable inferences in favor of the State, the evidence showed that the victim, who had previously been in a romantic relationship with Defendant for approximately one year, identified Defendant as the person who shot at her vehicle on February 10, 2015. She testified at trial that she ducked down and looked between the seat and the door during the shooting and saw Defendant standing in the middle of the street pointing a handgun at the back of her car. Although the victim admitted that she testified at the preliminary hearing that she did not see the shooter's face or clothing; she said that she identified Defendant when she ducked down and looked through the window. The victim testified that she was also able to identify Defendant at the time of the shooting based on his size and body shape. Officer Austin also testified that the victim told him that she saw a "figure in the back window, and she swore to [him] at that point that she thought it was her . . . ex-boyfriend [Defendant]." The victim further told him "that she could see - - recognized him, that she had been with him for a very long time and that she recognized right off the bat it was him." In addition to the victim's identification, Defendant himself admitted to Investigator Pugh that he shot at the victim's car to scare her. He specifically said, "I fired the gun."

Accordingly, we conclude that the evidence was sufficient to establish Defendant's identity as the perpetrator of the offenses in this case and to sustain his convictions for attempted voluntary manslaughter, aggravated assault, being a convicted felon in possession of a firearm, and employing a firearm during the commission of a dangerous felony. Defendant is not entitled to relief on this issue.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, we affirm Defendant's convictions.

_____
THOMAS T. WOODALL, JUDGE