IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 12, 2019

**STATE OF TENNESSEE v. JOSEPH EDWARD WILSON**

**Appeal from the Circuit Court for Robertson County**
**Nos. 74CC2-2016-CR-141, 74CC2-2016-CR-139, 74CC2-2016-CR-204**
**Jill Bartee Ayers, Judge**

_____

**No. M2018-00578-CCA-R3-CD**

_____

Following a jury trial, Defendant, Joseph Edward Wilson, was convicted of two counts of the sale of 0.5 grams or more of cocaine, one count of the sale of less than 0.5 grams of cocaine, and one count of delivery of 0.5 grams or more of cocaine. The trial court merged one of Defendant's convictions for the sale of 0.5 grams or more and his conviction for the delivery of 0.5 grams or more because they were part of the same criminal episode. The trial court sentenced Defendant to serve an effective twelve-year sentence. The sole issue raised on appeal is whether the evidence was sufficient to support Defendant's convictions. Having reviewed the entire record and the parties' briefs on appeal, we affirm Defendant's convictions and sentences, but we remand this case to the trial court for entry of a judgment for the merged offense pursuant to *State v. Berry*, 503 S.W.3d 360 (Tenn. 2015). Additionally, on remand the trial court is directed to enter corrected judgments for each of Defendant's remaining convictions to clarify which of Defendant's sentences run concurrently.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed;**
**Remanded for Entry of Corrected Judgments**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and TIMOTHY L. EASTER, JJ., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Joseph Edward Wilson.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and John E. Finklea, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

### *Evidence presented at trial*

In October 2015, Stephanie Bryant was working as a confidential informant for the Springfield Police Department. She testified that she had known Defendant for approximately one year and agreed to participate in an undercover investigation of Defendant. On October 20, 2015, agents searched Ms. Bryant, and Ms. Bryant called Defendant and arranged to meet him to purchase "a hundred in crack cocaine," which she testified was between one and one and a half grams. Ms. Bryant met Defendant at a church parking lot. Defendant arrived in a white Dodge Charger. Ms. Bryant got into Defendant's passenger seat. She testified that Defendant drove out of the parking lot and then turned around a short distance away and returned. She gave Defendant $100, and Defendant gave her crack cocaine. Ms. Bryant exited Defendant's vehicle, and Defendant drove away. Agents picked her up from the parking lot and took possession of the crack cocaine.

On October 22, 2015, Ms. Bryant again agreed to work with agents, and she and Defendant met for another controlled drug buy. Ms. Bryant gave Defendant $100, and Defendant gave her crack cocaine. Ms. Bryant participated in another controlled buy the following day. Ms. Bryant gave Defendant $350 in exchange for a "quarter" of cocaine. All of the controlled buys occurred in the same church parking lot, and Ms. Bryant made cell phone recordings of the buys. Those recordings were admitted as evidence. Ms. Bryant testified that Defendant can only be seen on the video recordings for "a second." She testified that she had no doubt that Defendant was the person she met for the three controlled drug buys. On cross-examination, Ms. Bryant acknowledged that she had prior convictions for forgery in 2010. She also acknowledged that she was charged with filing a false police report in 2016.

Detective Eddy Stewart, of the Springfield Police Department, testified that he drove Ms. Bryant to the church to meet Defendant, and he used binoculars to observe the meeting from a nearby garage. Detective Stewart saw Defendant arrive. Defendant was driving a white Dodge Charger. Detective Stewart saw Ms. Bryant get into Defendant's vehicle, and Defendant drove away. Detective Stewart lost sight of Defendant's vehicle "for a brief moment" before Defendant returned to the church parking lot. On cross-examination, Detective Stewart testified that he did not observe the license plate of the vehicle, and he did not confirm that Defendant regularly drove a white Dodge Charger. He testified that he only saw the vehicle for "fifteen or twenty seconds" before it pulled away.

Special Agent Justin Meinecke, of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), testified about the transaction that occurred on October 23, 2015. Agent Meinecke testified that Ms. Bryant was searched for narcotics, weapons, and money before she met with Defendant. Police gave Ms. Bryant $350 to give Defendant in exchange for a "quarter" of an ounce of cocaine, which Agent Meinecke testified was "about seven grams." He testified that Ms. Bryant was dropped off at the church, and "[s]he was in sight of law enforcement, one of the vehicles at all times." Police lost sight of the vehicle for a "very brief" time when Defendant drove away and then returned. After the transaction was complete, Ms. Bryant gave police a substance that was identified as crack cocaine. Agent Meinecke identified Defendant in a photograph taken from the video recording made by Ms. Bryant during the transaction.

Heather Keith, a senior forensic chemist with the Drug Enforcement Agency ("DEA"), analyzed the substance retrieved from the transaction on October 23, and identified it as 2.8 grams of cocaine. Special Agent Cassandra Ann Franklin-Deavers, of the Tennessee Bureau of Investigation ("TBI") Crime Laboratory in Nashville, analyzed the substances retrieved from the transactions on October 20 and 22. She determined that the substance sold on October 20 weighed 0.71 grams and contained a cocaine base. The substance sold on October 22 weighed 0.48 grams and contained a cocaine base.

Detective Charles Consiglio, of the Springfield Police Department, testified that he was present for the controlled buys between Defendant and the confidential informant. He testified that Defendant arrived to meet Ms. Bryant in a white Dodge Charger. Detective Consiglio viewed the vehicle through binoculars and observed barcode stickers in the vehicle windows. He testified, "[t]hat typically means that it is a rental vehicle." He testified that the driver was the only occupant in the vehicle. Detective Consiglio was familiar with Defendant and had seen him "ten or twenty times maybe" in the past "[f]ive or six years." He testified that he recognized Defendant as the driver of the vehicle.

On cross-examination, Detective Consiglio testified that he did not confirm that the vehicle was a rental car, and he did not record the vehicle tag number. Detective Consiglio testified that he checked with Enterprise car rental in Springfield, and he did not find a rental receipt for Defendant. On redirect examination, Detective Consiglio testified that it is "typical" for people involved in drug transactions to drive vehicles rented in someone else's name.

Leporsha Ellis, Defendant's fiancée, testified that she had known Defendant for twelve years. They had been married and divorced and had one child together. She testified that Defendant was employed and was a good provider for the family. Ms. Ellis testified that Defendant drove a white Buick LeSabre and that no one in their family drove a white Dodge Charger. Ms. Ellis testified that she had never known Defendant to

sell cocaine. She testified that she had a close relationship with Defendant's extended family and that Defendant had "a couple of cousins and a brother" who "all look alike." A photograph of Defendant's cousin Jerome Wilson was entered into evidence. Ms. Ellis testified that she had seen Jerome Wilson drive a white Dodge Charger before.

The State recalled Detective Consiglio to testify on rebuttal. He testified that he was familiar with Jerome Wilson. He agreed that the photograph introduced by the defense was a photograph of Jerome Wilson. He testified that he was certain that the person driving the vehicle on October 20, 22, and 23 was Defendant and not Jerome Wilson.

*Analysis*

Defendant's sole issue on appeal is whether the evidence was sufficient to sustain his convictions for the sale of cocaine. Specifically, Defendant challenges the proof of his identity as the person who sold cocaine to the confidential informant. Defendant argues that "the only proof of conviction is the word of a confidential informant that is unreliable." The State responds that there was sufficient evidence by which a jury could reasonably infer that Defendant was guilty of the sale of cocaine. We agree with the State.

When sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility

- 4 -

to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (1966) (citing *Carroll v. State*, 370 S.W.2d 523 (1963)).

"A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

"The identity of the perpetrator is an essential element of any crime." *State v Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citing *State v. Thompson*, 519 S.W.2d 789, 793 (Tenn. 1975)). The State has the burden of proving beyond a reasonable doubt the identity of the defendant as a perpetrator. *State v. Cribbs*, 967 S.W.2d 773, 779 (Tenn. 1998). Identity may be established by either direct evidence or circumstantial evidence, or a combination of the two. *Thompson*, 519 S.W.2d at 793; *see also State v. Lewter*, 313 S.W.3d 745, 748 (Tenn. 2010). The identification of the defendant as a perpetrator is a question of fact for the jury after considering all the relevant proof. *State v. Thomas*, 158 S.W.3d 361, 388 (Tenn. 2005) (citing *State v. Strickland*, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993)).

T.C.A. § 39-17-417 makes it an offense for a person to knowingly sell a controlled substance. It is also an offense to knowingly deliver a controlled substance. T.C.A. § 39-17-417(a)(3), (4).

Viewed in the light most favorable to the State, the proof presented at trial showed that Stephanie Bryant, an acquaintance of Defendant, agreed to work as a confidential informant for the Springfield Police Department. Under the supervision of law enforcement, she arranged three controlled drug buys with Defendant. Officers were present for the phone calls, searched Ms. Bryant prior to each meeting, and gave her cash to exchange for cocaine. On each occasion, Defendant arrived at the prearranged meeting location driving a white Dodge Charger. Ms. Bryant got into Defendant's vehicle, and Defendant drove a short distance. Ms. Bryant gave Defendant cash in exchange for cocaine. Immediately following each transaction, Ms. Bryant gave the drugs to law enforcement.

Defendant argues that "[t]he whole of Stephanie Bryant's testimony is flawed and should be disregarded as untrustworthy." He also argues that police were not close enough to observe and identify Defendant as the driver of the vehicle. Detectives Stewart

and Consiglio and Special Agent Meinecke all observed and identified Defendant as the person who met Ms. Bryant for the controlled buys. By way of its verdict, it is clear that the jury found that Defendant was the person who met Ms. Bryant on all three occasions and sold her cocaine. *See State v. Crawford*, 635 S.W.2d 704, 705 (Tenn. Crim. App. 1982) (citations omitted) ("[T]he identification of a defendant as the person who has committed the crime for which he is on trial is a question of fact for the determination of the jury."); *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citations omitted) ("Sufficient proof of the perpetrator's identity may be established through circumstantial evidence alone."). As such, sufficient evidence exists in the record to support Defendant's convictions. Defendant is not entitled to relief.

Finally, we observe that the record does not contain a judgment form for Defendant's merged conviction as required by our supreme court. In *State v. Berry*, the Tennessee Supreme Court held,

> [W]hen two jury verdicts are merged into a single conviction, the trial court should complete a uniform judgment document for each count. The judgment document for the greater (or surviving) conviction should reflect the jury verdict on the greater count and the sentence imposed by the trial court. The judgment document for the lesser (or merged) conviction should reflect the jury verdict on the lesser count and the sentence imposed by the trial court. Additionally, the judgment document should indicate in the "Special Conditions" box that the conviction merges with the greater conviction. To avoid confusion, the merger also should be noted in the "Special Conditions" box on the uniform judgment document for the greater or surviving conviction.

*Berry*, 503 S.W.3d at 364. Accordingly, we remand this case for entry of a judgment for the merged offense. Additionally, we remand for entry of corrected judgments on the remaining convictions. Defendant was charged in three separate indictments reflecting case numbers 74CC2-2016-CR-139, -141, and -204. Only the indictment in case number 74CC2-2016-CR-204 contained two counts, which are the two counts that were merged by the trial court following the jury verdict. The other two indictments contained one count each. The judgments of conviction, however, state that Defendant's sentences shall run concurrently as if a single case number contained three separate counts, rather than three separate case numbers that contain one count each. In case number 74CC2-2016-CR-139, the judgment form states that Defendant's sentence shall run "concurrent with Counts 2 & 3," but that case number contains only one count. In case number 74CC2-2016-CR-141, the judgment form states that Defendant's sentence shall run "concurrent with Count[s] 1 & 3," but that case number also contains only one count. In case number 74CC2-2016-CR-204, the judgment form states that Defendant's sentence shall run

"concurrent with Counts 1 & 2." It is apparent that the trial court intended for Defendant's sentences in each of his three convictions to run concurrently; however, the judgment forms as entered confuse the sentence. Accordingly, on remand the trial court is directed to enter corrected judgments for each conviction that clearly state that Defendant's sentences in each case number run concurrent with his sentences in the other case numbers.

## CONCLUSION

Based on the record and the parties' briefs, Defendant's convictions and sentences are affirmed. We remand this case for entry of a judgment on the merged offense, as well as entry of corrected judgments in the remaining convictions.

_____

THOMAS T. WOODALL, JUDGE